## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

DR. STANLEY M. BERRY,

     Plaintiff,

                                 Case No. 23-10981
                                 Hon. Jonathan J.C. Grey

v.                                    Magistrate Kimberly B. Altman

BOARD OF GOVERNORS OF
WAYNE STATE UNIVERSITY,
DR. SATINDER KAUR, in her individual capacity,
DR. PATRICIA WILKERSON-UDDYBACK,
in her individual capacity, and
DR. WAEL SAKR, in his individual and official capacities,

     Defendants.

_____/

## DEFENDANTS WAYNE STATE UNIVERSITY, DR. SATINDER KAUR AND DR. WAEL SAKR'S ANSWER TO PLAINTIFF'S COMPLAINT AND AFFIRMATIVE DEFENSES

     Defendants Board of Governors of Wayne State University, Dr. Satinder Kaur and Dr. Wael Sakr by and through their attorneys, Butzel Long, P.C., for their Answer to Complaint, state as follows:

### INTRODUCTION

     1.     This lawsuit arises out of Wayne State University's retaliatory failure to hire Dr. Stanley M. Berry, then-Interim Chair of the Department of Obstetrics and Gynecology, as permanent Chair after Dr. Berry raised the very serious issue of bias against Black patients in healthcare.

**ANSWER**:  Defendants lack knowledge of what Plaintiff's lawsuit "arises out of" but deny as untrue the underlying allegations in paragraph 1 of Plaintiff's Complaint.

2.      Defendant Dr. Wael Sakr, Dean of the University's School of Medicine, told Dr. Berry that his colleagues "don't love [him]" because of his outspoken determination that the Department address the issue to prevent racial disparities in maternal and fetal deaths in WSU's residency program.

**ANSWER**: Defendants deny the allegations in paragraph 2 of Plaintiff's Complaint as untrue.

3.      Dr. Sakr then hired another candidate, who is non-Black and objectively less qualified than Dr. Berry, who is Black, for the permanent Chair position, despite confiding in Dr. Berry that the other candidate was "less than ideal."

**ANSWER**: Defendants deny the allegations in paragraph 3 of Plaintiff's Complaint as untrue.

## PARTIES, JURISDICTION, AND VENUE

4.      Plaintiff, Dr. Stanley M. Berry ("Dr. Berry"), is a resident of the Eastern District of Michigan and a current employee of Wayne State University's School of Medicine.

**ANSWER**: Defendants, upon information and belief, admit the allegations in

paragraph 4 of Plaintiff's Complaint.

5.      Wayne State University ("WSU") is an institution of higher education created by the Michigan Constitution. M.C.L. § 390.641.

**ANSWER**: Defendants are not required to respond to the allegations in paragraph 5 of Plaintiff's Complaint as they set forth conclusions of law.

6.      Defendant, the Board of Governors of Wayne State University, is the corporate body responsible for managing Wayne State University's affairs and property and the body capable of suing and being sued on WSU's behalf. M.C.L. § 390.641.

**ANSWER**: Defendants are not required to respond to the allegations in paragraph 6 of Plaintiff's Complaint as they set forth conclusions of law.

7.      Defendant, Dr. Wael Sakr, is the Dean of WSU's School of Medicine. He is sued in his official and individual capacities.

**ANSWER**: Defendants admit that Dr. Sakr is the Dean of WSU's School of Medicine but lack knowledge as to the remaining allegations in paragraph 7 of Plaintiff's Complaint.

8.      Defendant, Dr. Satinder Kaur, is an Assistant Professor and the Director of WSU School of Medicine's Residency Program, which is jointly operated by WSU and the Detroit Medical Center (DMC). She is sued in her individual capacity.

3

**ANSWER**: Defendants admit that Dr. Kaur is an Assistant Professor but deny the remaining allegations in paragraph 8 of Plaintiff's Complaint as untrue.

9.     Defendant, Dr. Patricia Wilkerson-Uddyback, is the Vice President of Academic & Community Affairs at the Detroit Medical Center and, at all relevant times, was a faculty member at Wayne State University. On information and belief, in this role, Dr. Wilkerson-Uddyback was jointly employed by the Detroit Medical Center and Wayne State University. She is sued in her individual capacity.

**ANSWER**: Defendants deny the allegations in paragraph 9 of Plaintiff's Complaint as untrue.

10.     This Court has general federal question jurisdiction pursuant to 28 U.S.C. § 1331, Title VI of the Civil Rights Act of 1964, and 42 U.S.C. 1983.

**ANSWER**: Defendants are not required to respond to the allegations in paragraph 10 of Plaintiff's Complaint as they set forth conclusions of law.

11.     This Court has supplemental jurisdiction of Plaintiff's state law claims pursuant to 28 U.S.C.A. § 1367.

**ANSWER**:  Defendants are not required to respond to the allegations in paragraph 11 of Plaintiff's Complaint as they set forth conclusions of law.

12.     Venue is proper in this Court because Defendants obligated themselves to Plaintiff within the Eastern District of Michigan, the University is

located within the Eastern District of Michigan, Plaintiff resides within the Eastern District of Michigan, and, upon information and belief, Defendants reside within the Eastern District of Michigan.

**ANSWER**: In response to the allegation in paragraph 12 of its Complaint, Defendants admit that the events alleged to have been committed allegedly occurred in the Eastern District of Michigan, but specifically denies as untrue that Defendants engaged in any violation of laws alleged by Plaintiff, or that Plaintiff suffered any injury for which Defendants are liable.

13.     Plaintiff has timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission and will amend this Complaint to include additional claims pursuant to Title VII of the Civil Rights Act of 1964 upon receipt of his notice of right to sue.

**ANSWER:** Defendants are without sufficient information or knowledge to either admit or deny the allegations in paragraph 13 of Plaintiff's Complaint.

**STATEMENT OF FACTS**

**Dr. Stanley M. Berry's Background**

14.     Plaintiff, Dr. Stanley M. Berry, has been a member of Wayne State University's faculty between 1988-2001, and then again from 2005 to the present.

**ANSWER**:  Defendants, upon information and belief, admit the allegations in paragraph 14 of Plaintiff's Complaint.

5

15.     Dr. Berry's research interests include high-risk obstetrics and prenatal diagnosis and therapy, concentrating on the use of fetal blood sampling to study fetal physiology.

**ANSWER**:  Defendants are without sufficient information or knowledge to either admit or deny the allegations in paragraph 15 of Plaintiff's Complaint.

16.     Dr. Berry's extensive list of accomplishments and experience in his field includes:

- The Willaford Leach/Armand Headee Professor of Obstetrics and Gynecology at Emory University;

- Chief of Service at Emory Crawford Long Hospital;
- Research project and educational mentor for the Detroit Medical Center/Wayne State University School of Medicine Maternal-Fetal Medicine Fellowship and Training Program;

- Administrator and clinician for the Center for Advanced Obstetrical Care and Research of the Perinatology Research Branch of the Eunice Kennedy Shriver National Institute for Child Health and Human Development at WSU;

- Medical director of Women's Services and Quality Improvement for Meridian Health Plan;

- Corporate Chair of Department of Obstetrics and Gynecology for William Beaumont Hospitals;

- Associate Chair of Obstetrical Services at WSU School of Medicine/Hutzel Hospital;

- Vice Chief of Obstetrics and Gynecology for WSU School of Medicine/Hutzel Hospital;

- Director of Maternal/Fetal Medicine Fellowship Program at WSU School of Medicine/Hutzel Hospital;

- Project Site Manager at the Perinatology Research Branch;

- National Chair of Student National Medical Association;

- Examiner for American Board of Obstetrics and Gynecology;

- Fellow Emeritus of American College of Obstetrics and Gynecology;

- Diplomate of National Board of Medical Examiners;

- Recipient of Central Prize and Certificate of Merit Award from Central Association of Obstetricians and Gynecologists;

- Recipient of President's Presenter's Award from the Society of Gynecologic Investigation Scientific Program Committee;
- Recipient of Outstanding Junior Faculty Award from WSU Department of Obstetrics and Gynecology; and

- 2020 TIME Magazine Coronavirus Hero.

**ANSWER:** Defendants are without sufficient information or knowledge to either admit or deny the allegations in paragraph 16 of Plaintiff's Complaint.

17.   On January 25, 2021, Dr. Berry was appointed to serve as the Interim Chair and Frank P. Iacobell Professor of Wayne State University's Department of Obstetrics and Gynecology.

**ANSWER**:   Defendants admit the allegations in paragraph 17 of Plaintiff's Complaint.

18.   Dr. Berry assumed his new role on March 15, 2021.

7

**ANSWER**:   Defendants  admit  the  allegations  in  paragraph  18  of  Plaintiff's Complaint.

19.      Dr. Berry appointed his colleague, Dr. Lanetta Coleman, to serve as Executive Vice Chair of the Department of Obstetrics and Gynecology.

**ANSWER**:  Defendants admit that Plaintiff attempted to appoint Dr. Coleman to a  Vice  Chair  position  but  deny  remaining  allegations  in  paragraph  19  of Plaintiff's Complaint in the manner and form alleged.

20.      Dr. Coleman was the first woman to be named Chief of Obstetrics and Gynecology at DMC Sinai-Grace Hospital.

**ANSWER**:  Defendants  are  without  sufficient  information  or  knowledge  to either admit or deny the allegations in paragraph 20 of Plaintiff's Complaint.

21.    Dr. Berry is Black/African-American.

**ANSWER**:   Defendants  admit  the  allegations  in  paragraph  21  of  Plaintiff's Complaint.

22.    Dr. Coleman is Black/African-American.

**ANSWER**:   Defendants  admit  the  allegations  in  paragraph  22  of  Plaintiff's Complaint.

**Dr. Berry Raises Issue of Implicit Bias and Advocates for Black Patients**

23.      On January 14, 2022, Dr. Coleman reported a concern regarding a resident  interaction  with  a  Black  patient  at  Sinai  Grace  to  Dr.  Satinder  Kaur,

Assistant Professor and Director of the School of Medicine's Residency Program, and Dr. Berry.

**ANSWER**: Defendants deny that the Dr. Kaur was a Director of the "School of Medicine's Residency Program" as the OBGYN residency program is a DMC program. Defendants admit the remaining allegations in paragraph 23 of Plaintiff's Complaint.

24.   Dr. Coleman wrote in an email:

There are many concerns regarding this patient's experience and the level of quality and care that she received… There is a large volume of information and studies available regarding pain management bias and inherent bias on labor and delivery. This patient interaction provides an opportunity to learn, teach, and be aware of how unrecognized bias can adversely affect patient care and clinical outcomes. Perhaps we can provide a training module on pain management in the antepartum patient.

**ANSWER**:  Defendants admit that quoted language was contained in part of a larger email, which speaks for itself.

25.   Dr. Coleman was referring to the many studies and resources addressing unconscious bias and racial disparities in healthcare, particularly maternal and infant health.

**ANSWER**:  Defendants are without sufficient information or knowledge to either admit or deny the allegations in paragraph 25 of Plaintiff's Complaint.

26.   For example, the Centers for Disease Control and Prevention has

noted that Black women are three times more likely to die from a pregnancy-related cause than non-Black women, and has established Black Maternal Health Week to bring attention and action in improving Black maternal health.

**ANSWER**:  Defendants are without sufficient information or knowledge to either admit or deny the allegations in paragraph 26 of Plaintiff's Complaint.

27.     According to a 2016 study published in the Proceedings of the National Academies of Science, a shocking *half* of white medical trainees held one or more false beliefs about Black patients' experiences of pain. 40% endorsed the belief that Black people have "thicker skin". Trainees who believe that Black patients are less sensitive to pain than non-Black patients are less likely to treat Black patients' pain appropriately. A "meta-analysis" of 20 years of studies found that Black patients were 22% less likely than white patients to receive pain medication at all.

**ANSWER**: Defendants are without sufficient information or knowledge to either admit or deny the allegations in paragraph 27 of Plaintiff's Complaint.

28.     In short, Dr. Coleman's concerns were well-founded and legitimate.

**ANSWER**:  Defendants deny the allegations in paragraph 28 of Plaintiff's Complaint as untrue.

29.     These issues had also arisen locally, and so Dr. Coleman and Dr. Berry were both rightfully concerned about the possibility of another disastrous

outcome in this case. Importantly, the patient at issue had a history of preterm birth, which is the highest risk factor for delivering another premature baby.

**ANSWER**:   Defendants lack knowledge of Dr. Coleman and Dr. Berry's concerns and lack knowledge of the patient's medical history but deny the remaining allegations in paragraph 29 in the manner and form alleged.

30.   Dr. Kaur met with the resident and responded to Dr. Coleman and Dr. Berry.

**ANSWER**:   Defendants admit the allegations in paragraph 30 of Plaintiff's Complaint.

31.   After reading Dr. Kaur's response, Dr. Berry was left with the impression that Dr. Kaur was not taking Dr. Coleman's concerns as seriously as the matter necessitated.

**ANSWER**:   Defendants are without sufficient information or knowledge to either admit or deny the allegations in paragraph 31 of Plaintiff's Complaint.

32.   On January 23, 2022, Dr. Berry asked Dr. Kaur to address the issue of implicit bias in healthcare and communicate to the residents specifically that:

> It is not acceptable to send a pregnant woman in the third trimester who is complaining of extreme pain home [because] 1. Sending a patient in this condition home does not comport with the humane/compassionate practice of medicine. 2. Sending a patient home in this circumstance [severe pain in third trimester of pregnancy] does not comport with the safe practice of medicine because there is always a chance that this woman may have been in preterm labor.

**ANSWER**:   Defendants admit the language in the January 23 email from Dr. Berry, which speaks for itself, but deny as untrue that it accurately described the patient interaction at issue.

33.    The following day, Dr. Kaur sent all of the Obstetrics & Gynecology residents a link to a presentation entitled "It Starts With You: Examining Implicit Bias in Healthcare Settings."

**ANSWER**:   Defendants admit the allegations in paragraph 33 of Plaintiff's Complaint.

34.    However, Dr. Kaur's message to residents did not address the specific issues that Dr. Berry had raised regarding the treatment of Black patients reporting pain during pregnancy.

**ANSWER**:   Defendants deny the allegations in paragraph 34 of Plaintiff's Complaint as untrue.

35.    In an email to Dr. Kaur and Dr. Coleman, Dr. Berry reiterated the importance of sending the residents a memorandum "outlining the negatives of sending pregnant women home who are in pain… Specifically, this communication must highlight the lack of compassion and lack of patient safety such actions represent. The memo must mention how inherent bias factors into such decisions."

**ANSWER**:   Defendants admit the language in the email from Dr. Berry, which

speaks for itself, but deny as untrue that it accurately described the patient interaction at issue.

36.　　To address these issues, on January 26, 2022, Dr. Berry sent a memorandum with the topic "Implicit Bias" to the Department of OB/GYN Trainees, Faculty, and Private Attendings.

**ANSWER**:　Defendants lack knowledge of Plaintiff's motivation or whether he was trying to address "these issues" but admit the remaining allegations in paragraph 36 of Plaintiff's Complaint.

37.　　Dr. Berry's memorandum stated in part:

> This case is important because it is an example of how we need to improve our care of pregnant patients across our system. Another aspect of this case that is important to note is that the patient in this case was an African- American woman, and residents, fellows, and attendings need to be aware that the possibility of implicit bias may exist in these situations regardless of the race or ethnicity of the provider. The decision-making on the part of the resident in this case is an example of care that should not occur in our program or our institution regardless of whether implicit bias was a factor. Please be mindful of this case when confronted with a patient who has a similar clinical presentation regardless of the patients' race or ethnicity. As for the possibility of implicit bias, all of us need to be aware that we are capable of such bias, and the only way to eliminate such prejudices from our practice is to continually be aware that we may harbor them.

**ANSWER**:　Defendants admit the language in the memorandum from Dr. Berry, which speaks for itself, but deny as untrue that it accurately described the patient interaction at issue.

38.     In a follow-up email, Dr. Berry invited the department to discuss the issues at a meeting to take place on January 27, 2022, and noted:

> In my 38 years of working with and teaching trainees, I understand that mistakes are made everyday by everybody, and when these mistakes pose a real danger to patients, they need to be discussed openly, honestly, and in a timely manner. Given the fact that our hospital is currently the object of a lawsuit involving a case very similar to the one referred to in my memorandum, there was an urgency to bring this case to light in a way that reached as many providers as possible, as quickly as possible… Had this patient been discharged and then delivered a premature infant outside of the hospital, it could have been a disaster… I am not willing to discuss this case only in the context of implicit bias when the possible medical consequences to this patient and others are so astronomically grave…
>
> Calling attention to this matter is my responsibility as Chari [sic] of this Department to publicly raise issues like this, and I am disappointed that some of you consider my urgent effort to end this substandard medical practice in poor taste. The best way to care for a particularly vulnerable community is to consistently deliver the best medical care possible and that is the sole objective of my communication…"

**ANSWER**:   Defendants admit the allegations in paragraph 38 of Plaintiff's Complaint.

### Wayne State University Administrators and Faculty Lash Out at Dr. Berry

39.     Then-Dean of the Wayne State University School of Medicine, Dr. Mark Schweitzer, canceled the meeting Dr. Berry had scheduled.

**ANSWER**:   Defendants admit only that the meeting was canceled.

40.    On information and belief, Dr. Schweitzer canceled Dr. Berry's meeting at the request of Dr. Patricia Wilkerson-Uddyback, the Detroit Medical Center Graduate Medical Education Department's Vice President of Academic & Community Affairs.

**ANSWER**:    Defendants are without sufficient information or knowledge to either admit or deny the allegations in paragraph 40 of Plaintiff's Complaint.

41.    In lieu of Dr. Berry's meeting, the Department held a separate meeting on January 27, 2022, spearheaded by Dr. Wilkerson-Uddyback and Dr. Kaur.

**ANSWER**: Defendants deny that Dr. Kaur or Dr. Wilkerson-Uddyback "spearheaded" the meeting but admit the remaining allegations in paragraph 41 of Plaintiff's Complaint.

42.    Dr. Berry and Dr. Coleman were not invited.

**ANSWER**:    Defendants admit the allegations in paragraph 42 of Plaintiff's Complaint.

43.    At this meeting, Dr. Wilkerson-Uddyback and Dr. Kaur referred to Dr. Berry (and Dr. Coleman) as "bad apples"; stated that they would not allow them to "spoil the bunch"; referenced Dr. Berry's age in a negative light; hinted that they intended to complain about Dr. Berry and Dr. Coleman to the people in charge of faculty hiring and firing decisions; stated that Dr. Coleman had a

"history of hostility"; and implied that residents shouldn't have to work with Dr. Coleman.

**ANSWER**: Defendants deny the allegations in paragraph 43 of Plaintiff's Complaint in the manner and form alleged. Answering further, certain residents and fellows raised concerns regarding the history of hostility of Dr. Coleman and implied certain residents should not have to work with her.

44.     Also on January 27, 2022, Dr. Kaur sent out a survey to all of the residents, stating: "We are collecting information about residents' preference with regard to working with Dr. Lanetta Coleman. Please select one of the choices below."

**ANSWER**:   Defendant admits the allegations contained in paragraph 44 of Plaintiff's Complaint.

45.     The only two choices provided in this survey were "I would prefer NOT to work with Dr. Coleman" and "I have no preference one way or the other."

**ANSWER**:   Defendants admit the allegations in paragraph 45 of Plaintiff's Complaint.

46.     The survey did not allow residents a way to express anything positive about Dr. Coleman and was designed to solicit negative results.

**ANSWER**:   Defendants deny the allegations in paragraph 46 of Plaintiff's

Complaint as untrue.

47.     Over the next few months, Dr. Kaur and Dr. Wilkerson-Uddyback continued to speak negatively about and solicit negative feedback regarding Dr. Berry's attempt to raise the serious issue of racial bias in maternal healthcare.

**ANSWER**:   Defendants deny the allegations in paragraph 47 of Plaintiff's Complaint as untrue.

48.     Meanwhile, on March 1, 2022, Dr. Wael Sakr began to serve as interim Dean of the Wayne State University School of Medicine.

**ANSWER**:   Defendants admit the allegations in paragraph 48 of Plaintiff's Complaint.

49.     Immediately after the new Dean began his position, Dean Sakr informed Dr. Berry that Dr. Wilkerson-Uddyback had requested a meeting to discuss her "concerns" about Dr. Berry's communications to the OB-GYN residency program.

**ANSWER**:   Defendants admit the allegations contained in paragraph 49 of Plaintiff's Complaint.

50.     Dr. Berry told Dean Sakr that Dr. Wilkerson-Uddyback likely wished to discuss his memoranda, and he forwarded Dean Sakr the memoranda and emails he had written to the department outlining the importance of preventing implicit bias from leading to disastrous medical outcomes for Black patients and

babies.

**ANSWER**:  Defendants deny the allegations in paragraph 50 of Plaintiff's Complaint in the manner and form alleged.

51.  On or about March 16, 2022, a colleague told Dr. Berry that Dr. Wilkerson-Uddyback was pushing for Dr. Berry's dismissal as Interim Chair because of his actions described herein.

**ANSWER**:  Defendants are without sufficient information or knowledge to either admit or deny the allegations in paragraph 51 of Plaintiff's Complaint.

52.  The colleague told Dr. Berry that Dr. Wilkerson-Uddyback had sent a written memorandum to the Dean that not only attempted to get Dr. Berry dismissed as Interim Chair of the Department, but to bar both Dr. Berry and Dr. Coleman from having any further contact with residents, an extreme and completely unnecessary course of action.

**ANSWER**:  Defendants are without sufficient information or knowledge to either admit or deny the allegations in paragraph 52 of Plaintiff's Complaint.

53.  Dean Sakr told Dr. Berry that the controversy that arose out of his memoranda was "in the past".

**ANSWER**:  Defendants deny the allegations in paragraph 53 of Plaintiff's Complaint in the manner and form alleged.

54.  However, it was clearly not.

**ANSWER**: Defendants deny the allegations in paragraph 54 of Plaintiff's Complaint in the manner and form alleged.

55. On March 23, 2022, Dean Sakr met with the full OB-GYN department.

**ANSWER**: Defendants admit the allegations in paragraph 55 of Plaintiff's Complaint.

56. Dr. Berry was present for the first half-hour of this meeting, but then left to allow the department to discuss the department without him present.

**ANSWER**: Defendant lacks knowledge of the time Plaintiff was present and his reasoning for staying or leaving the meeting.

### Defendant Promotes a Less Qualified, Non-Black Candidate to Department Chair Because of Dr. Berry's Race and Advocacy

57. Meanwhile, Dr. Berry learned that Dean Sakr intended to begin searching for candidates for the permanent Department Chair position.

**ANSWER**: Defendants deny the allegations in paragraph 57 of Plaintiff's Complaint in the manner and form alleged. Answering further, the search for a permanent Department Chair had been ongoing prior to Dr. Sakr's appointment as interim Dean.

58. On April 22, 2022, Dr. Berry submitted his CV to Dr. Noreen Rossi, who was chairing the search committee for a permanent Chair of the OB-GYN Department, for consideration.

**ANSWER**: Defendants are without sufficient information or knowledge to either

admit or deny the allegations in paragraph 58 of Plaintiff's Complaint.

59.     Dr. Rossi told Dr. Berry that the Dean's search was not currently active.

**ANSWER**:  Defendants are without sufficient information or knowledge to either admit or deny the allegations in paragraph 59 of Plaintiff's Complaint.

60.     On June 2, 2022, after learning from a colleague, Dr. David Bryant, that he had applied for the position, Dr. Berry again expressed his interest in the position and submitted his CV directly to Dean Sakr for consideration.

**ANSWER**:   Defendants lack knowledge of what Dr. Berry learned from an unnamed colleague or when.  Defendants admit only that at some point in time Dr. Berry discussed the permanent position with Dr. Sakr.

61.     On July 6, 2022, Dean Sakr told Dr. Berry that he would not be considered for the permanent Chair position.

**ANSWER**:   Defendants deny the allegations in paragraph 61 of Plaintiff's Complaint in the manner and form alleged.

62.     Dean Sakr told Dr. Berry that their colleagues, including Dr. Kaur and Dr. Wilkerson-Uddyback, were not willing to work with him; on information and belief, because of his actions over the past six months in attempting to impress upon the Department the seriousness of implicit racial bias in maternal medicine.

**ANSWER**:  Defendants deny the allegations in paragraph 62 of Plaintiff's complaint as untrue.

63.     Dean Sakr told Dr. Berry: "They don't love you, and I don't think they ever will."

**ANSWER**:   Defendants deny the allegations in paragraph 63 of Plaintiff's Complaint as untrue.

64.     Dean Sakr told Dr. Berry that he would instead be appointing Dr. David Bryant to the permanent Chair position.

**ANSWER**:    Defendants deny the allegations in paragraph 64 of Plaintiff's Complaint as untrue.

65.     Dr. Bryant was objectively less qualified than Dr. Berry for the permanent Chair position.

**ANSWER**:   Defendants deny the allegations in paragraph 65 of Plaintiff's Complaint as untrue.

66.     Dr. Bryant held the rank of Associate Professor, while Dr. Berry held the rank of Full Professor.

**ANSWER**:   Defendants admit the allegations in paragraph 66 of Plaintiff's Complaint.

67.     As Interim Chair, Dr. Berry had the appropriate experience to lead the Department as Chair, while Dr. Bryant had no such experience.

**ANSWER**:    Defendants deny the allegations in paragraph 67 of Plaintiff's Complaint as untrue.

68.     Dr. Bryant has significantly less research experience than Dr. Berry.

**ANSWER**:   Defendants deny the allegations in paragraph 68 of Plaintiff's Complaint as untrue.

69.     Dr. Bryant has significantly less leadership experience than Dr. Berry.

**ANSWER**:   Defendants deny the allegations in paragraph 69 of Plaintiff's Complaint as untrue.

70.     Dr. Bryant is not Black/African-American.

**ANSWER**:   Defendants admit the allegations in paragraph 70 of Plaintiff's Complaint.

71.     Dean Sakr confided that his decision to appoint the other candidate was "not ideal," but that he felt he had little choice in the matter.

**ANSWER**:   Defendants deny the allegations in paragraph 71 of Plaintiff's Complaint as untrue.

72.     Dr. Bryant took over the permanent Chair position on or about August 25, 2022.

**ANSWER**:   Defendants admit the allegations in paragraph 72 of Plaintiff's Complaint.

73.     Dr. Berry retained the lesser title of Project Site Manager of the Perinatology Research Branch of the Eunice Kennedy Shriver National Institute of Child Health and Human Development.

**ANSWER**:   Defendants admit that Plaintiff remained the Project Site Manager of the Perinatology Research Branch but lack knowledge of the meaning Plaintiff ascribes to the phrase "lesser title."

74.     The Perinatology Research Branch closed on January 31, 2023.

**ANSWER**:   Defendants admit the allegations in paragraph 74 of Plaintiff's Complaint.

75.     Dr. Berry now holds the lesser title of Professor of Obstetrics and Gynecology.

**ANSWER**:   Defendants admit the allegations in paragraph 75 of Plaintiff's Complaint.

**COUNT I**
**Violation of Title VI of the Civil Rights Act of 1964**
*Against Defendant Board of Governors of Wayne State University*

76.     Plaintiff incorporates the preceding allegations as if fully restated herein.

**ANSWER**:  Defendants incorporate by reference their responses to Paragraphs 1-75 of Plaintiff's Complaint as if fully set forth here.

77.     Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial

assistance."

**ANSWER**:    Defendants are not required to respond to the allegations in paragraph 77 of Plaintiff's Complaint as they set forth conclusions of law.

78.    As a public university, Defendant Board of Governors of Wayne State University received and continues to receive federal financial assistance.

**ANSWER**:    Defendants are not required to respond to the allegations in paragraph 78 of Plaintiff's Complaint as they set forth conclusions of law.

79.    Defendant subjected Plaintiff to intentional discrimination, excluded him from participation in, and denied him the benefits offered by the WSU School of Medicine by their conduct described herein, including but not limited to denying Plaintiff the position of/promotion to Chair of the School of Medicine's Department of Obstetrics and Gynecology.

**ANSWER**:    Defendants deny the allegations in paragraph 79 of Plaintiff's Complaint as untrue.

## COUNT II
**Violation of the Equal Protection Clause of the
Fifth and Fourteenth Amendments to the U.S. Constitution 42 U.S.C. 1983**
*Against Defendants Sakr, Kaur, and Uddyback in their individual capacities*

80.    Plaintiff incorporates the preceding allegations as if fully restated herein.

**ANSWER**:  Defendants incorporate by reference their responses to Paragraphs 1-79 of Plaintiff's Complaint as if fully set forth here.

24

81.     The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution provides that "no state shall…deny to any person within its jurisdiction the equal protection of the laws."

**ANSWER**:   Defendants are not required to respond to the allegations in paragraph 81 of Plaintiff's Complaint as they set forth conclusions of law.

82.     42 U.S.C. § 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of law.

**ANSWER**: Defendants are not required to respond to the allegations in paragraph 82 of Plaintiff's Complaint as they set forth conclusions of law.

83.     Defendants Sakr, Kaur, and Wilkerson-Uddyback (the individual Defendants) acted under color of law when they engaged in the conduct described herein, including but not limited to discriminating and retaliating against Plaintiff and denying him the position of/promotion to Chair of the WSU School of Medicine's Department of Obstetrics and Gynecology.

**ANSWER**:   Defendants deny the allegations in paragraph 83 of Plaintiff's Complaint as untrue.

84.     Defendants Sakr, Kaur, and Wilkerson-Uddyback violated Plaintiff's clearly established constitutional rights of which any reasonable person in their position would have known; they are therefore not entitled to qualified

immunity.

**ANSWER**:   Defendants deny the allegations in paragraph 84 of Plaintiff's Complaint as untrue.

### COUNT III
### Race Discrimination in Violation of the Elliott-Larsen Civil Rights Act
### M.C.L. 37.2201 et seq.

85.     Plaintiff incorporates the preceding allegations as if fully restated herein.

**ANSWER**:  Defendants incorporate by reference their responses to Paragraphs 1-84 of Plaintiff's Complaint as if fully set forth here.

86.     At all relevant times, Plaintiff was an employee and Defendants were employers as defined by the Elliott-Larsen Civil Rights Act, M.C.L. 37.2201 et seq.

**ANSWER**:   Defendants are not required to respond to the allegations in paragraph 86 of Plaintiff's Complaint as they set forth conclusions of law.

87.     The State of Michigan has waived its Eleventh Amendment sovereign immunity and consented for Defendant Board of Governors of Wayne State University, an arm of the State, to be sued under the Elliott-Larsen Civil Rights Act.

**ANSWER**:   Defendants deny the allegations in paragraph 87 of Plaintiff's Complaint as untrue.

26

88.    Plaintiff is a member of a protected class based on his race (Black).

**ANSWER**:    Defendants are not required to respond to the allegations in paragraph 88 of Plaintiff's Complaint as they set forth conclusions of law.

89.    Plaintiff expressed interest in, applies for, and was qualified for the position of/promotion to permanent Chair of the WSU School of Medicine's Department of Obstetrics and Gynecology.

**ANSWER**:    Defendants admit only that Plaintiff expressed interest in a Chair position but deny the remaining allegations in paragraph 89 of Plaintiff's Complaint as untrue.

90.    Defendants    considered    for    and    denied    Plaintiff    the position/promotion.

**ANSWER**:    Defendants deny the allegations in paragraph 90 of Plaintiff's Complaint in the manner and form alleged. Answering further, Plaintiff did not formally apply for the position.

91.    Defendants passed over Plaintiff for the position/promotion in favor of a less qualified candidate who was not a member of Plaintiff's protected class.

**ANSWER**:    Defendants deny the allegations in paragraph 91 of Plaintiff's Complaint as untrue.

92.    Defendants' actions were taken willfully.

**ANSWER**:    Defendants deny the allegations in paragraph 92 of Plaintiff's

Complaint as untrue.

93.    But for Plaintiff's race, Defendants would not have denied him the position/promotion.

**ANSWER**:  Defendants deny the allegations in paragraph 93 of Plaintiff's Complaint as untrue.

**COUNT IV**
**Retaliation in Violation of the Elliott-Larsen Civil Rights Act**
**M.C.L. 37.2201 et seq.**

94.    Plaintiff incorporates the preceding allegations as if fully restated herein.

**ANSWER**:  Defendants incorporate by reference their responses to Paragraphs 1-93 of Plaintiff's Complaint as if fully set forth here.

95.    At all relevant times, Plaintiff was an employee and Defendants were employers defined by the Elliott-Larsen Civil Rights Act, M.C.L. 37.2201 *et seq*.

**ANSWER**:  Defendants are not required to respond to the allegations in paragraph 95 of Plaintiff's Complaint as they set forth conclusions of law.

96.    The State of Michigan has waived its Eleventh Amendment sovereign immunity and consented for Defendant Board of Governors of Wayne State University, an arm of the State, to be sued under the Elliott-Larsen Civil Rights Act.

**ANSWER**:   Defendants  deny  the  allegations  in  paragraph  96  of  Plaintiff's Complaint as untrue.

97.     Plaintiff engaged in protected activity including, but not limited to, raising concerns of discrimination in the form of bias against Black patients by non- Black residents and physicians in University programs.

**ANSWER**: Defendants  deny  the  allegations  in  paragraph  97  of  Plaintiff's Complaint as untrue.

98.     Defendants were aware of Plaintiff's protected activity.

**ANSWER**:   Defendants  deny  the  allegations  in  paragraph  98  of  Plaintiff's Complaint as untrue.

99.     Defendants retaliated against Plaintiff for his protected activity by subjecting  him  to  adverse  employment  actions  including,  but  not  limited  to, denying  him  the  position/promotion  to  Chair  of  the  School  of  Medicine's Department of Obstetrics and Gynecology.

**ANSWER**:   Defendants  deny  the  allegations  in  paragraph  99  of  Plaintiff's Complaint as untrue.

100.   Defendants' actions were taken willfully.

**ANSWER**:   Defendants  deny  the  allegations  in  paragraph  100  of  Plaintiff's Complaint as untrue.

101.   But  for  Plaintiff's  protected  activity,  Defendants  would  not  have

denied him the position/promotion.

**ANSWER**:   Defendants deny the allegations in paragraph 101 of Plaintiff's Complaint as untrue.

## DAMAGES

102.   As a direct and proximate result of Defendants' actions, Plaintiff has suffered damages, including but not limited to loss of income and earning capacity, impairment of his ability to work, emotional and physical distress, loss of reputation, humiliation and embarrassment, and will continue to suffer such damages in the future.

**ANSWER**:   Defendants deny the allegations in paragraph 102 of Plaintiff's Complaint as untrue.

## RELIEF REQUESTED

WHEREFORE, Defendants deny that Plaintiff is entitled to any relief and respectfully requests that this Court dismiss the Complaint, with prejudice, and award Defendants their costs and attorneys' fees incurred in defending this action.

Respectfully submitted,

By: */s/ Brett Miller*
Brett Miller (P68612)
Butzel Long, PC
150 W. Jefferson, Suite 100
Detroit, MI 48226
313-225-5316
millerbr@butzel.com

Dated: July 21, 2023

## <u>AFFIRMATIVE AND OTHER DEFENSES</u>[1]

Defendants submit the following as their Affirmative and Other Defenses to Plaintiff's Complaint.

1.      Plaintiff has failed to mitigate Plaintiff's alleged damages, if any.

2.      The Complaint fails, in whole or in part, including the nature of damages requested, to state claims upon which relief can be granted.

3.      Any claim for damages greater than any applicable statutory caps, including but not limited to the damage caps in 42 U.S.C. §1981a, are barred.

4.      Punitive and liquidated damages are not available under Michigan law for the claims Plaintiff asserts.

5.      As a governmental agency or political subdivision of the State, punitive damages are not available against the Wayne State University Board of Governors or any individual defendant acting in his or her official capacity.

6.      Any actions taken by any defendant were not willful, made in bad faith, and were not made without a reasonable ground to believe they did not violate law.

---

[1] By asserting a matter as a defense, Defendant does not intend to assume any burden of proof or persuasion on any matter for which Plaintiff would otherwise have those burdens, or on any matter for which Defendant would not otherwise have those burdens.  Rather, these matters are pleaded in order to put Plaintiff on notice and to avoid any allegation of waiver.

7.    Any actions taken by any defendant were not engaged in with malice or with reckless indifference to any state or federally protected right.

8.    To the extent it may be determined that there was any discriminatory animus, the actions about which plaintiff complains would have been taken in any event for legitimate business reasons.

9.    Plaintiff's claims are barred, in whole or in part, because of immunity conferred by the 11th Amendment to the United States Constitution, and/or because of sovereign immunity.

10.    Plaintiff has failed to properly and timely file Notice before the Michigan Court of Claims as required by MCL 600.6431 before initiating this litigation and therefore Defendants have governmental and/or sovereign immunity and/or some or all of Plaintiff's claims are time-barred under this statute.

11.    The Michigan Court of Claims may have exclusive jurisdiction over some or all claims, requests for relief, and/or parties.

12.    Plaintiff's damages, if any, were not the result of acts or omissions by any defendant.

13.    The individual defendants were not state officials and therefore cannot be sued in an "official capacity."

14.    Some or all Defendants are entitled to immunity or qualified immunity.

15.     As a constitutionally created State University, the WSU Board of Governors cannot be held liable under agency theories or *respondeat superior* for the alleged unconstitutional or intentional acts of its employees.

16.     Plaintiff's claims may be barred, in whole or in part, by the applicable statute of limitation period, contractual or otherwise.

17.     Plaintiff's claims in the Complaint may be barred, in whole or in part, by the doctrines of equitable, collateral, and/or judicial estoppel and/or res judicata.

18.     Plaintiff's claims are barred, in whole or in part, because Wayne State University, and the individual defendants acting in their official capacities as alleged by plaintiff, are not "persons" subject to suit under 42 U.S.C. §1983.

19.     There is no individual liability under any state or federal constitutional claim.

20.     Plaintiff's claims are barred by the doctrines of unclean hands, waiver, and/or laches.

21.     Plaintiff has failed to exhaust his administrative, contractual, or other remedies.

22.     Plaintiff is not entitled to a jury trial for any state law claim for which the Michigan Court of Claims would have exclusive jurisdiction, and any request for a jury for any such claim should be stricken.

23.     Plaintiff's claims are barred in whole or in part by one of the affirmative defenses set forth in Fed. R. Civ. Pro. 8(c).

Defendants reserve the right to assert such further affirmative defenses as may become apparent during the course of discovery in this case.  Until Defendants avail themselves of discovery, they will not know for certain whether all of the aforementioned affirmative defenses will be raised by motion before or at trial, but defendants assert them now in an effort to give plaintiff notice of such defenses.

WHEREFORE, the Defendants respectfully request that this Court dismiss Plaintiff's causes of action in total and that it award Defendants their costs and fees incurred in responding to this Complaint.

Respectfully submitted,

By: */s/ Brett Miller*
Brett Miller (P68612)
Butzel Long, PC
150 W. Jefferson, Suite 100
Detroit, MI 48226
313-225-5316
millerbr@butzel.com

Dated: July 21, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 21, 2023, I electronically filed the above document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

By: */s/ Brett Miller*
Brett Miller (P68612)

100364317