# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DR. STANLEY M. BERRY,

        Plaintiff,　　　　　　　　　　Case No. 23-cv-10981
　　　　　　　　　　　　　　　　　　　　Hon.  Jonathan J.C. Grey

v.

BOARD OF GOVERNORS OF WAYNE STATE
UNIVERSITY, DR. SATINDER KAUR, in her
individual capacity, DR. PATRICIA WILKERSON-UDDYBACK,
in her individual capacity, and DR. WAEL SAKR,
in his individual and official capacities,

        Defendants.

| | |
|---|---|
| Amanda M. Ghannam (P83065)<br>NachtLaw, P.C.<br>2200 Hunt St.<br>Detroit, MI 48207<br>734-663-7550<br>aghannam@nachtlaw.com<br>Co-Counsel for Plaintiff | Brett J. Miller (P68612)<br>Butzel Long, P.C.<br>150 West Jefferson Avenue, Suite 100<br>313-225-7000<br>millerbr@butzel.com<br>Counsel for Defendants Boar of Governors of Wayne State University, Dr. Satinder Kaur, and Dr. Wael Sakr |
| William H. Goodman (P14173)<br>Goodman Hurwitz & James, P.C.<br>1394 E. Jefferson Avenue<br>Detroit, MI 48207<br>313-567-5170<br>bgoodman@goodmanhurwitz.com<br>mail@goodmanhurwitz.com<br>Co-Counsel for Plaintiff | Benjamin W. Jeffers (P57161)<br>Hickey Hauck Bishoff Jeffers & Seabolt, PLLC<br>1 Woodward Avenue, Suite 2000<br>Detroit, MI 48226<br>313-964-8600<br>Bjeffers@hhbjs.com<br>Counsel for Defendant Dr. Patricia Wilkerson-Uddyback |

**PLAINTIFF'S RESPONSE TO DEFENDANT DR. PATRICIA WILKERSON-UDDYBACK'S MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

I. Statement of Facts.............................................................................................1

II. Argument..........................................................................................................3

   a. Legal Standard ............................................................................................3

   b. Plaintiff's Claims Under 42 U.S.C. §1983 ................................................3

   c. Plaintiff's ELCRA Race Discrimination Claim .......................................8

   d. Plaintiff's ELCRA Retaliation Claim......................................................11

III. Conclusion ....................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.,* 727 F.3d 502, 503 (6th Cir. 2013) ..................................................................................................................3

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) ......................................................5

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ...............................................................3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ...............................................3

*Beny v. Univ. of Michigan Bd. of Regents,* No. 22-12021, 2023 WL 4409107, at *7 (E.D. Mich. July 7, 2023) ............................................................................... 9, 13

*Cahoo v. SAS Analytics, Inc*., 912 F.3d 887, 897 (6th Cir. 2019) ...............................3

*Elezovic v. Ford Motor Co*., 472 Mich. 408, 422 (2005) ...........................................9

*Hall v. State Farm Ins. Co*., 18 F. Supp. 2d 751, 764 (E.D. Mich. 1998), aff'd, 1 F. App'x 438 (6th Cir. 2001) ....................................................................................9

*In re Flint Water Cases*, 453 F. Supp. 3d 970, 984 (E.D. Mich. 2020) ......................6

*Jenkins v. Se. Michigan Chapter, Am. Red Cross*, 141 Mich. App. 785, 799 (1985) ..................................................................................................................................9

*Kubik v. Cent. Michigan Univ. Bd. of Trustees*, 221 F. Supp. 3d 885, 903 (E.D. Mich. 2016) .........................................................................................................10

*Moore v. Paducah,* 890 F.2d 831 (6th Cir.1989) ........................................................5

*Nation v. Wedemeyer*, No. 95–6354, 1996 WL 452861, at *2 (6th Cir.1996) ..........5

*Paterek v. Vill. of Armada*, 801 F.3d 630, 651 (6th Cir. 2015) .................................7

*Roberts v. Principi*, 283 F. App'x 325, 333 (6th Cir. 2008) .......................................7

*Robinson v. Runyon*, 149 F.3d 507, 513 (6th Cir. 1998) .........................................11

*United States v. Price,* 383 U.S. 787 (1966) ..............................................................5

*Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) ...........................................6

*Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 646 (6th Cir. 2015) ..13

*Yerkes v. Ohio State Highway Patrol*, 455 F. Supp. 3d 523, 546 (S.D. Ohio 2020).7

**Statutes**

42 U.S.C. §1983 ........................................................................................ 4, 5, 7

Plaintiff, Dr. Stanley M. Berry, respectfully requests this Court deny Defendant Dr. Patricia Wilkerson-Uddyback's Motion to Dismiss (ECF No. 11), primarily because it is premature. Discovery is necessary to shed further light on Defendant Wilkerson-Uddyback's role in the Defendants' unlawful conduct. As pled, Plaintiff's Complaint plausibly alleges that Defendant Wilkerson-Uddyback, in her role as an agent of Wayne State University, played a significant part in the Defendants' decision not to hire Dr. Berry as permanent Chair of WSU's Department of Obstetrics and Gynecology because of his race and in retaliation for his determined efforts to address the serious issue of implicit bias in medical care.

## I.     Statement of Facts

Plaintiff incorporates by reference herein the Statement of Facts contained in his Complaint, ECF No. 1, ¶¶ 14-75. Those facts may be summarized as follows:

Plaintiff, Dr. Stanley M. Berry, is a highly accomplished medical professional, specializing in the field of obstetrics and gynecology. Dr. Berry assumed the role of Interim Chair of Wayne State University School of Medicine's Department of Obstetrics and Gynecology in March 2021. In January 2022, Dr. Berry was a recipient of a concern regarding the treatment of a Black patient at the Detroit Medical Center, and of a broader concern regarding the well-documented issue of implicit bias towards Black patients, especially pregnant women, in the medical field generally. Dr. Berry took the issue seriously and committed himself to addressing

1

implicit bias among the Department's medical residents and faculty, with the goal of raising awareness, encouraging his colleagues to learn about the issues, and avoiding potentially catastrophic medical outcomes for Black mothers and babies.

Unfortunately, over the next few months, Wayne State University faculty and administrators, as well as medical professionals associated with the University such as Defendant Wilkerson-Uddyback, chose to lash out at Dr. Berry in retaliation for his advocacy for Black patients and his opposition to discrimination (even implicit, unconscious discrimination). In particular, Defendant Wilkerson-Uddyback referred to Dr. Berry and another Black colleague as "bad apples" to WSU physicians; stated that she would not allow them to "spoil the bunch"; referenced Dr. Berry's age in a negative light; hinted that she intended to complain about Dr. Berry to the people in charge of faculty hiring and firing decisions; solicited negative feedback regarding Dr. Berry's attempt to raise the serious issue of racial bias in maternal healthcare; sent a written memorandum to the Dean that not only attempted to get Dr. Berry dismissed as Interim Chair of the Department, but to bar him from having any further contact with residents; and attempted to (or did) meet with the Dean to push her retaliatory agenda in-person.

Meanwhile, Dr. Berry learned that the Dean intended to appoint a permanent Chair of the Obstetrics & Gynecology Department. Upon submitting his name for consideration, the Dean told Dr. Berry that he would not be promoted to Permanent

2

Chair because of what his colleagues, including Defendant Wilkerson-Uddyback, had said and done about his actions. The Dean specifically told Dr. Berry: "They don't love you, and I don't think they ever will." Instead, the Dean promoted a less qualified, non-Black candidate to the role of Permanent Chair.

## II. Argument

### a. Legal Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint need not include "detailed factual allegations"; it need only "[allow] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013). The Court must construe the complaint in the light most favorable to the plaintiff, draw all reasonable inferences in its favor, and accept all well-pleaded allegations in the complaint as true. *Cahoo v. SAS Analytics, Inc.*, 912 F.3d 887, 897 (6th Cir. 2019).

### b. Plaintiff's Claims Under 42 U.S.C. §1983

3

Defendant Wilkerson-Uddyback first argues that she cannot be held liable for constitutional violations under 42 U.S.C. §1983 because she is not a "state actor" and was not "acting under color of law." This argument is at best premature, as the extent of Defendant Wilkerson-Uddyback's relationship with Wayne State University is not yet clear. Plaintiff pled that Defendant Wilkerson-Uddyback was, at all relevant times, a faculty member at Wayne State University, jointly employed by WSU and the DMC in her role as the DMC's Vice President of Academic & Community Affairs. (ECF No. 1, PageID.3). At this stage, the Court must accept that allegation as true. Common sense leads us to the plausible inference that the DMC's relationship with WSU's residency program falls under the purview of the "Academic" in "Vice President of Academic & Community Affairs." Moreover, Plaintiff has pled numerous specific allegations regarding Defendant Wilkerson-Uddyback's conduct within, and relationship to, Wayne State University's School of Medicine. For example, Plaintiff has pled that Defendant Wilkerson-Uddyback spearheaded WSU department meetings (ECF No. 1, PageID.10); had extensive interaction with residents through the WSU School of Medicine's residency program (ECF No. 1, PageID.10-11); had direct access to, and meetings with, the Dean of WSU's School of Medicine (ECF No. 1, PageID.12); and had input into meetings of and decisions made by the School of Medicine (ECF No. 1, PageID. 12-13). These are not the actions of somebody who has no relationship with a public university.

4

The Court can make the plausible inference that Defendant Wilkerson-Uddyback had some sort of employee or agent relationship with the University. Discovery is needed to determine the full extent of that relationship. Plaintiff does not yet know the full extent of Defendant Wilkerson-Uddyback's influence over the Dean and University's employment decisions. But at the 12(b)(6) stage, Plaintiff has plausibly alleged that Defendant Wilkerson-Uddyback was jointly employed by WSU or otherwise held a role as a faculty member or agent of the university, had significant input into the retaliatory decision not to hire Dr. Berry as permanent Chair, and that she can be considered a "state actor" or to have "acted under color of law" pursuant to 42 U.S.C. 1983.

Even if Defendant Wilkerson-Uddyback had no formal relationship with WSU, "a private actor may nevertheless be held liable if he or she "is a willful participant in the joint activity with the State or its agents"" (*Moore v. Paducah,* 890 F.2d 831 (6th Cir.1989), *citing United States v. Price,* 383 U.S. 787 (1966) and *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)) or "if he or she conspires with a state actor to commit the offensive conduct." *Nation v. Wedemeyer*, No. 95–6354, 1996 WL 452861, at *2 (6th Cir.1996). Plaintiff has more than adequately alleged that Defendant Wilkerson-Uddyback, through the specific conduct described *supra* and in Plaintiff's Complaint at PageID.10-13, willfully participated or conspired in efforts to retaliate against Dr. Berry.

5

It is also well-established that a private party's actions can constitute "state action" under the Fourteenth Amendment where the party's actions may be "fairly attributable to the state." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992). There are several tests to determine if a private party's actions are fairly attributable to the state, including the public function test, the state compulsion test, and the symbiotic relationship test. *Id.* This Court also recognizes the entwinement test, which "asks whether the private entity is involved with governmental policy-setting or the government is entwined in a private entity's management." *In re Flint Water Cases*, 453 F. Supp. 3d 970, 984 (E.D. Mich. 2020). It may be too early to fully analyze Defendant Wilkerson-Uddyback's conduct under these tests. But at this stage, Plaintiff has plausibly alleged that Defendant Wilkerson-Uddyback was involved with governmental policy-setting. As discussed above, Plaintiff's Complaint includes specific allegations regarding Defendant Wilkerson-Uddyback's input and involvement into crusading against Dr. Berry at WSU and the resulting employment decision. Defendants, not Plaintiff, are in possession of further information regarding whether Defendant Wilkerson-Uddyback's conduct may be attributed to the state. Defendant's motion should be denied and discovery should be allowed to proceed on this issue.

Defendant's argument that Plaintiff has failed to allege specific unconstitutional conduct on her part is similarly unpersuasive. It is very well

6

established that in an employment discrimination case, a plaintiff can incorporate claims against someone in Defendant Wilkerson-Uddyback's position under a "cat's paw" theory. The "cat's paw" theory refers to a situation in which "a biased subordinate, who lacks decision-making power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *Roberts v. Principi*, 283 F. App'x 325, 333 (6th Cir. 2008). "Under this theory, the subordinate, not the nominal decisionmaker, is the driving force behind the employment action…In effect, the [retaliator] is the decisionmaker, and the titular 'decisionmaker' is a mere conduit for the [retaliator's] discriminatory animus." *Id.* (internal citations omitted). The Sixth Circuit applies the cat's paw theory of liability in § 1983 cases. *Yerkes v. Ohio State Highway Patrol*, 455 F. Supp. 3d 523, 546 (S.D. Ohio 2020), *citing Paterek v. Vill. of Armada*, 801 F.3d 630, 651 (6th Cir. 2015). In *Yerkes,* the Court denied the individual defendants' motion to dismiss, ruling: "[E]ven if the Individual Defendants could show that they were not directly involved in the investigation or the decisions about which Plaintiff complains, they could still be liable if Plaintiff could show that the decision makers were a conduit of the Individual Defendants' prejudice." *Yerkes* at 546.

    The same logic applies here. Plaintiff has more than adequately pled that Defendant Wilkerson-Uddyback's conduct falls under a "cat's paw" theory. While further discovery is needed to explore the full extent of her influence on the

7

discriminatory and retaliatory employment decision at the heart of this case, Plaintiff's Complaint contains specific allegations about Defendant Wilkerson-Uddyback's attempts to retaliate against him. Plaintiff has pled that Defendant Wilkerson-Uddyback used her role at WSU to "push for Dr. Berry's dismissal as Interim Chair because of his actions" and "sent a written memorandum to the Dean that not only attempted to get Dr. Berry dismissed as Interim Chair of the Department, but to bar both Dr. Berry and Dr. Coleman from having any further contact with residents, an extreme and completely unnecessary course of action." (ECF No. 1, PageID.13) Plaintiff's Complaint goes on to allege that following (and because of) Defendant Wilkerson-Uddyback's actions and comments about his advocacy for Black patients, the WSU School of Medicine Dean told Dr. Berry that he would not be considered for the permanent department chair position. (ECF No. 1, PageID.13-14) This Court can make a plausible inference that Defendant Wilkerson-Uddyback harbored retaliatory animus, imputed to the Dean and Wayne State University under a "cat's paw" theory, and that Defendant Wilkerson-Uddyback may be held liable.

### c. Plaintiff's ELCRA Race Discrimination Claim

For many of the same reasons, Plaintiff's claims under Michigan's Elliott-Larsen Civil Rights Act are sufficient to survive a 12(b)(6) motion to dismiss.

8

Defendant's first argument is that Plaintiff has not alleged that Defendant Wilkerson-Uddyback was an "agent" of Wayne State University. As discussed above, for the purposes of this motion, the Court must accept as true Plaintiff's allegations that Defendant Wilkerson-Uddyback was a WSU faculty member and/or jointly employed by WSU and the DMC, Plaintiff's specific factual allegations regarding Defendant Wilkerson-Uddyback's conduct and involvement with WSU's hiring decisions, and the logical, plausible inference that Defendant Wilkerson-Uddyback had some sort of agency relationship with the University.

This Court considered this issue in *Beny v. Univ. of Michigan Bd. of Regents,* No. 22-12021, 2023 WL 4409107, at *7 (E.D. Mich. July 7, 2023). There, the Court declined to dismiss claims against individual defendants under ELCRA on the grounds that individual liability was inapplicable, noting that the Michigan Supreme Court in *Elezovic v. Ford Motor Co.*, 472 Mich. 408, 422 (2005), "repeatedly stated without qualification that individuals may be held liable under the ELCRA's broad umbrella." In *Hall v. State Farm Ins. Co.*, 18 F. Supp. 2d 751, 764 (E.D. Mich. 1998), aff'd, 1 F. App'x 438 (6th Cir. 2001), this Court denied "the individual Defendants' effort to obtain a summary judgment on the basis that individual liability is unavailable under ELCRA." And in *Jenkins v. Se. Michigan Chapter, Am. Red Cross*, 141 Mich. App. 785, 799 (1985), the Michigan Court of Appeals affirmed the denial of a motion to dismiss individual defendants on the same grounds, finding

9

that they were agents because they were responsible for making personnel decisions affecting the plaintiff. Again, here, Plaintiff has more than sufficiently pled factual support for the inference that Defendant Wilkerson-Uddyback was responsible for the discriminatory and retaliatory decision not to hire him as Chair through the "cat's paw" theory of liability.

Defendant's reliance on *Kubik v. Cent. Michigan Univ. Bd. of Trustees*, 221 F. Supp. 3d 885, 903 (E.D. Mich. 2016), is inapposite for several reasons. First, the plaintiff in *Kubik* did not assert a "cat's paw" theory of liability. As discussed *supra*, this theory applies in employment discrimination cases, and may be used to establish liability on the part of biased subordinates who, through their influence of the "official" decision-maker, become the "driving force" behind a discriminatory employment decision. Plaintiff has more than plausibly alleged that Defendant Wilkerson-Uddyback used the Dean and WSU as a "cat's paw" to ensure he would be ousted from his position as department chair. Second, *Kubik* was decided on a motion for summary judgment, not a motion to dismiss for failure to state a claim. The plaintiff in *Kubik* had an opportunity to conduct discovery. The court's ruling was based on evidence that the other faculty members lacked the authority to appoint the plaintiff. That record has not yet been developed in this case. Again, Plaintiff has pled sufficient specific allegations regarding Defendant Wilkerson-Uddyback's influence into WSU's hiring decisions to support a plausible inference that she acted

10

as an "agent". Discovery may reveal further information, and if the evidence does not support such a finding, Defendant will be free to renew her argument in a motion for summary judgment.

Finally, Defendant Wilkerson-Uddyback's argument that Plaintiff has not alleged that she herself harbored racial animus against him fails to persuade. As the Sixth Circuit has acknowledged, "intentional discrimination is often difficult to prove without significant reliance on circumstantial evidence. Rarely will there be direct evidence from the lips of the defendant proclaiming his or her racial animus." *Robinson v. Runyon*, 149 F.3d 507, 513 (6th Cir. 1998). At the pleading stage, Plaintiff has adequately alleged that Defendant Wilkerson-Uddyback played a significant role in the implementation of a discriminatory hiring decision[1]. Discovery as to the extent of that role should be permitted to proceed.

### d. Plaintiff's ELCRA Retaliation Claim

Plaintiff has also adequately pled a retaliation claim under the Elliott-Larsen Civil Rights Act. The Act's "antiretaliation provisions plainly permit plaintiffs to bring retaliation claims against individuals." *Beny* at *7. And as discussed at length in the preceding sections, Plaintiff has adequately alleged both that Defendant

---

[1] Similarly, Defendant's assertion that she could not have harbored animus because she herself is a woman of color is, unfortunately, unpersuasive. Numerous historical examples show that members of different racial and ethnic groups do have the capacity to harbor racial animus themselves. Defendant Wilkerson-Uddyback's race is irrelevant here.

11

Wilkerson-Uddyback was an agent of WSU and that her specific conduct implicates liability under the "cat's paw" theory. Defendant Wilkerson-Uddyback did more than "recommend an adverse employment action." Plaintiff has alleged that she spearheaded a lengthy crusade against him in direct retaliation for his conduct.

Defendant is incorrect that Plaintiff has not alleged any protected activity. Plaintiff's Complaint states that he sent out multiple memoranda to the entire WSU Department of OB/GYN Trainees, Faculty, and Private Attendings. (It must also be noted that the Complaint makes clear that Defendant Wilkerson-Uddyback was obviously aware of these memoranda, indicating that she received memoranda sent to the WSU Department Faculty and lending additional support to the conclusion that she had a faculty, employee, and/or agent relationship to WSU.) Plaintiff's memoranda stated in part:

> …Another aspect of this case that is important to note is that the patient in this case was an African-American woman, and residents, fellows, and attendings need to be aware that the possibility of implicit bias may exist in these situations regardless of the race or ethnicity of the provider. The decision-making on the part of the resident in this case is an example of care that should not occur in our program or our institution regardless of whether implicit bias was a factor. Please be mindful of this case when confronted with a patient who has a similar clinical presentation regardless of the patients' race or ethnicity…
>
> …I am disappointed that some of you consider my urgent effort to end this substandard medical practice in poor taste. The best way to care for a particularly vulnerable community is to consistently deliver the best medical care possible…

12

Defendant mischaracterizes this as "seeking to raise awareness on behalf of prospective patients." But Plaintiff did much more than that. Plaintiff specifically opposed biased and discriminatory treatment of Black patients at WSU-affiliated facilities by WSU-affiliated physicians – a precise type of civil rights violation the ELCRA was designed to prohibit. Article 3 of the ELCRA prohibits the denial of the "full and equal enjoyment" of the "services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service" because of, *inter alia,* race. It also defines "place of public accommodation" to include "health facilities" as well as "institutions of any kind." M.C.L. 37.2301(a). And the ELCRA's anti-retaliation provision, Article 7, prohibits "retaliat[ion] or discriminat[ion] against a person because the person has opposed a violation of this act." Plaintiff's memoranda, which were sent to WSU's entire OB/GYN department, including Defendant Wilkerson-Uddyback, clearly constituted opposition to violations of civil rights laws prohibiting discrimination in medical care.

Notably, in employment retaliation cases, "the alleged discriminatory acts need not be actually illegal in order for the opposition clause to apply." *Beny* at *10, citing *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 646 (6th Cir. 2015). Plaintiff has adequately pled that he engaged in protected activity and that Defendant Wilkerson-Uddyback retaliated against him because of it.

### III. Conclusion

13

For these reasons, Plaintiff respectfully requests that this Honorable Court deny Defendant Dr. Patricia Wilkerson-Uddyback's Motion to Dismiss Plaintiff's Complaint in its entirety.

Respectfully submitted,

**NACHTLAW, P.C.**

*/s/ Amanda M. Ghannam*
Amanda M. Ghannam (P83065)
aghannam@nachtlaw.com

Dated: August 21, 2023

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Response Brief was filed electronically with the court's electronic filing system. Notice of this filing will be sent by the court's electronic filing system to all parties.

/s/ Karina Alvarez
Litigation Paralegal

Dated: August 21, 2023