## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DR. STANLEY M. BERRY,

        Plaintiff,

v.

BOARD OF GOVERNORS OF
WAYNE STATE UNIVERSITY,
DR. PATRICIA WILKERSON-
UDDYBACK, in her individual
capacity, et al.,

        Defendants.

_____/

Case No. 23-10981
Hon. Jonathan J.C. Grey

## ORDER DENYING DEFENDANT DR. PATRICA WILKERSON-UDDYBACK'S MOTION TO DISMISS (ECF No. 11)

## I.  INTRODUCTION

On April 26, 2023, plaintiff Dr. Stanley M. Berry filed this lawsuit, alleging violations of: (a) Title VII of the Civil Rights Act of 1964; (b) the Equal Protection Clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution; and (c) the Michigan Elliott-Larsen Civil Rights Act, M.C.L. § 37.2201 et seq. ("ELCRA"). Berry's claims stem from defendants' alleged wrongful failure to hire Berry as the permanent Chair of the Department of Obstetrics and Gynecology (the

"Department") at the Wayne State University ("WSU") School of Medicine ("SOM"). (ECF No. 1.) Wilkerson-Uddyback filed a motion to dismiss the claims filed against her, and the motion has been fully briefed. (*See* ECF Nos. 11, 12, 13.)

The Court concludes that oral arguments would not aid in the disposition of the motion, and it rules on the briefs alone. *See Kloss v. RBS Citizen*, 996 F. Supp. 2d 574, 590 (E.D. Mich. 2014) (courts may determine motions on the briefs without a hearing) (citing Fed. R. Civ. P. 78(b)); *Mohlong v. Long Beach Mortg.*, No. 12-10120, 2013 WL 827221, at *2 (E.D. Mich. Mar. 6, 2013) (stating that the Eastern District of Michigan L.R. 7.1(f)(2) gives discretion to the Court to decide motions without hearings).

For the reasons set forth below, the Court **DENIES** the motion to dismiss.

## II.   BACKGROUND

Berry is a "Black/African-American" physician and "current employee of" SOM. (ECF No. 1, at ¶¶ 4, 21.) In January 2021, he was appointed to serve as the Interim Chair of the Department. (*Id.* at ¶¶ 1, 17.) In 2022, Berry alleges that he learned of, and then shared with

others, an interaction between a Detroit Medical Center hospital system ("DMC") physician resident and a patient of color at DMC's Sinai Grace hospital; Berry believed that implicit bias impacted the treatment of that Black patient. (*Id.* at ¶ 23.) Berry sent a memorandum and an email to the entire Department on January 26, 2022, inviting everyone to a meeting to discuss the topic of implicit bias. (*Id.* at ¶¶ 24–38.) Dr. Mark Schweitzer, then the Dean of the SOM, canceled the meeting Berry had proposed. (*Id.* at ¶ 39.)

Berry applied for the permanent Chair of the Department in April 2022. (*Id.* at ¶ 58.) The new Dean of the SOM (Dr. Wael Sakr), however, selected someone else for that position. (*Id.* at ¶¶ 61, 64.)

Wilkerson-Uddyback is the Corporate Vice-President of Academic & Community Affairs at the DMC and, allegedly, a faculty member at WSU. (*Id.* at ¶ 9.) Berry's complaint alleges that, "[o]n information and belief," based on Wilkerson-Uddyback's positions, she was "jointly employed" by the DMC and WSU. (*Id.*) Berry claims Wilkerson-Uddyback was the person, or one of the persons, who requested that Schweitzer cancel Berry's proposed January 27, 2022 meeting regarding implicit bias. (*Id.* at ¶ 40.) Together with Dr. Satinder Kaur, an Assistant

Professor and the Director of the SOM's Residency Program, which is jointly operated by WSU and the DMC, Wilkerson-Uddyback allegedly conducted a separate meeting on January 27, 2022, and Berry was not invited to that meeting. (*Id.* at ¶ 41.) At the January 27, 2022 meeting, Wilkerson-Uddyback and Kaur:

> referred to Dr. Berry (and Dr. Coleman) as "bad apples"; stated that they would not allow [Dr. Berry and Dr. Coleman] to "spoil the bunch"; referenced Dr. Berry's age in a negative light; hinted that they intended to complain about Dr. Berry and Dr. Coleman to the people in charge of faculty hiring and firing decisions; stated that Dr. Coleman had a "history of hostility"; and implied that residents shouldn't have to work with Dr. Coleman.

(*Id.* at ¶ 43.)

For several months thereafter, Wilkerson-Uddyback (and Kaur) allegedly continued to denigrate Berry and "solicit negative feedback" regarding Berry's focus on racial bias in maternal healthcare. (*Id.* at ¶ 47.) On March 1, 2022, Wilkerson-Uddyback reportedly requested a meeting with the new SOM Dean (Sakr) regarding "concerns" about Berry's implicit bias communications. (*Id.* at ¶ 49.) Berry alleges that Wilkerson-Uddyback also was pushing for Berry's dismissal as Interim Chair for the same "concerns," even going so far as to send a memorandum to the Dean to push for Berry's dismissal as Interim Chair

and to prohibit Berry from having any further contact with residents. (*Id.* at ¶¶ 51–52.)

When Sakr informed Berry that he would not become the permanent Chair of the Department, Sakr allegedly advised Berry that certain of his colleagues, including Wilkerson-Uddyback, were not willing to work with Berry because of Berry's pursuit of the implicit bias program. (*Id.* at ¶ 62.)

Berry alleges that Wilkerson-Uddyback acted under color of law when she engaged in the foregoing actions. (*Id.* at ¶ 83.) Berry contends Wilkerson-Uddyback's actions aimed at denying him the permanent Department Chair position were discriminatory and retaliatory toward him, in violation of his clearly established constitutional rights. (*Id.* at ¶¶ 83–84.) For this reason, he claims that Wilkerson-Uddyback is not entitled to qualified immunity. (*Id.* at ¶ 84.)

## III.   LEGAL STANDARD

The Court may grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if the complaint fails to allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). When assessing a motion to

dismiss under Rule 12(b)(6), the Court must give the plaintiff the benefit of the doubt and must accept all the complaint's factual allegations as true. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).

But the Court will not presume the truth of any legal conclusions stated in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the pleaded facts do not raise a right to relief, the Court must grant the motion to dismiss. *Winnett v. Caterpillar*, *Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

## IV.   ANALYSIS

Berry asserts three claims against Wilkerson-Uddyback: (a) Count II, for violation of the Equal Protection Clause of the Fifth and Fourteenth Amendments to the U.S. Constitution, pursuant to 42 U.S.C. § 1983; (b) Count III, for race discrimination under ELCRA; and (c) Count IV, for retaliating against Berry for raising concerns of discrimination against Black patients, in violation of ELCRA.

### A.   Count II – Equal Protection Clause

Count II alleges that Wilkerson-Uddyback (as well as Sakr and Kaur) violated his rights under the Equal Protection Clause of the Fifth

and Fourteenth Amendments to the U.S. Constitution, via 42 U.S.C.

1983.

> To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir.1994).

*Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006).

Wilkerson-Uddyback argues that Berry "has not alleged plausible **facts** that she is a 'state actor.'" (ECF No. 11, PageID.91 (emphasis in original).). Wilkerson-Uddyback asserts that the allegations tying her to WSU are conclusory, namely that she was "jointly employed" by the DMC and WSU, as this conclusion is unsupported elsewhere and made "upon information and belief." (*Id.* at PageID.91–92.)

The Court finds otherwise. First, Berry alleges that Wilkerson-Uddyback was "a faculty member at" WSU, a position which may be indicative of being a public employee and state actor. (*Id.* at ¶ 9.)[1] At a

---

[1] It is not clear that being a faculty member alone means she is a "state actor." *See Siskaninetz v. Wright State Univ.*, 175 F. Supp. 2d 1018, 1024 n.4 (S.D. Ohio 2001) (citation omitted) (after stating that "[a] state university without question is a state actor," the court stated only that "the Court also will assume, arguendo, that an adjunct assistant professor at a state university is a state actor."). Since the Court finds that Berry's allegations support finding that Wilkerson-Uddyback is a state

minimum, the allegation forms a basis for permitting discovery to determine what role Wilkerson-Uddyback had at WSU. Second, although Berry's allegation that Wilkerson-Uddyback was "jointly employed" by the DMC and WSU was formed based "upon information and belief," the Sixth Circuit permits plaintiffs to plead "upon information and belief" when "a plaintiff may lack personal knowledge of a fact, but ha[s] 'sufficient data to justify interposing an allegation on the subject' or [must] 'rely on information furnished by others.'" *Starkey v. JPMorgan Chase Bank, NA*, 573 F. App'x 444, 447 (6th Cir. 2014) (citing Charles A. Wright and Arthur R. Miller, 5 Fed. Prac. & Proc. Civ. § 1224 (3d ed. 2012)). This remains true even after *Iqbal* and *Twombly* "'where the facts are peculiarly within the possession and control of the defendant, *see, e.g., Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008), or where the belief is based on factual information that makes the inference of culpability plausible,' *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citing *Iqbal*, 129 S. Ct. at 1949)." *Hunter v. Booz Allen Hamilton, Inc.*, 418 F. Supp. 3d 214, 224 (S.D. Ohio 2019) (quoting *Gerling & Assocs.,*

---

actor on other grounds, the Court need not reach at this time the issue of whether she is a state actor simply by virtue of allegedly being a faculty member at WSU.

*Inc. v. Odulair, LLC*, No. 2:16-cv-1000, 2017 WL 2790669, at *6 (S.D. Ohio June 28, 2017)). Here, the Court finds that Berry's allegations regarding Wilkerson-Uddyback's employment status is based on information that is within the possession and control of defendant WSU, as well as plausible inferences. Significantly, at that stage of the proceedings, the Court need not find that there is "factual support" for a claim, as only sufficient factual allegations that must be accepted as true are required. *See, e.g., Keys*, 684 F.3d at 608.

Third, Berry makes numerous factual allegations that could support a finding that Wilkerson-Uddyback's actions could be "fairly attributable to the state." *United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464, 478 (6th Cir. 2014) (quoting *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) ("Anyone whose conduct is 'fairly attributable to the state can be sued as a state actor under § 1983.'")

> Courts rely on four tests to determine whether challenged conduct is "fairly attributable to the state": (1) the public function test, (2) the state compulsion test, (3) the symbiotic relationship or nexus test, and (4) the entwinement test. *Marie v. Am. Red Cross*, 771 F.3d 344, 362 (6th Cir. 2014). Despite the development of four separate tests to assess whether a particular defendant is a state actor, "the Supreme Court has made clear that all of our various 'criteria' boil down to a core question: whether 'there is such a 'close nexus between the State and the challenged action' that seemingly

private behavior 'may be fairly treated as that of the State itself.'" *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 676 (6th Cir. 2018) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001)). This is a fact-specific inquiry. *Siskaninetz v. Wright State Univ.*, 175 F. Supp. 2d 1018, 1023 (S.D. Ohio 2001); *see also Brentwood Acad.*, 531 U.S. at 295, 299, 121 S.Ct. 924 ("[N]o one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient....").

*Schwartz v. Univ. of Cincinnati Coll. of Med.*, 436 F. Supp. 3d 1030, 1038 (S.D. Ohio 2020).

Such allegations include that Wilkerson-Uddyback: (1) requested that Schweitzer cancel the January 27, 2022 meeting Berry proposed regarding implicit bias, which Schweitzer then canceled, (ECF No. 1, PageID.10 at ¶ 40); (2) together with Kaur, spearheaded an alternate Department meeting on that day (*id.* at ¶ 41); (3) requested a meeting with the new Dean of the SOM (Sakr) to discuss concerns about Berry's communications to the Department (*id.* at PageID.12 at ¶ 49); (4) pushed for Berry's dismissal as Interim Chair of the Department (*id.* at ¶ 51); (5) wrote a memorandum to Sakr to bar Berry from having any contact with residents (*id.* at ¶ 52); and (6) communicated to Sakr that she was not willing to work with Berry (*id.* at PageID.13 at ¶ 62).

The Court finds that these allegations: (a) support a finding that Wilkerson-Uddyback's conduct was fairly attributable to WSU, indisputably a state actor, *NCAA v. Tarkanian*, 488 U.S. 179, 192 (1988); (b) reveal that Wilkerson-Uddyback was "a willful participant in the joint activity with" the SOM or its agents, *Moore v. Paducah*, 890 F.2d 831, 834 (6th Cir. 1989) (citing *United States v. Price*, 383 U.S. 787 (1966); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)); and (c) show that Wilkerson-Uddyback "conspire[d] with a state actor to commit the offensive conduct." *Nation v. Wedemeyer*, 1996 WL 452861, at *2 (6th Cir. 1996).

Contrary to Wilkerson-Uddyback's contention, the Court finds *Terzneh v. Fed. Nat'l Mortg. Ass'n* does not support finding that Berry failed to sufficiently plead that Wilkerson-Uddyback is a state actor. 2021 WL 4529707, at *6 (W.D. Tenn. Oct. 4, 2021). In *Terzneh*, the court addressed a plaintiff's proposed amendment to the complaint that stated that the defendants violated her Fifth Amendment rights "[w]hile acting under color of state [law.]" *Id.* The *Terzneh* court held that "merely stating that a defendant acted 'under color of state law' does not make them a state actor." *Id.* That conclusory statement is not analogous or

11

comparable to Berry's allegations in this case. Unlike Terzneh, Berry alleges that Wilkerson-Uddyback was: (1) a faculty member at WSU; (2) jointly employed by WSU and the DMC; and (3) engaged in multiple instances of conduct that could be fairly attributable to WSU.

The Court turns to Wilkerson-Uddyback's argument that Berry has not plausibly alleged that she participated in the decision not to hire Berry as Department Chair, which means that she could not have engaged in unconstitutional conduct. (ECF No. 11, PageID.92–93.) Wilkerson-Uddyback first argues that a plaintiff must explain each defendant's improper activity with specificity, noting that Berry acknowledged that Sakr made the decision to deprive him of the Department Chair position. ((ECF No. 1, PageID.13 at ¶ 61 ("Dean Sakr told Dr. Berry that he would not be considered for the permanent Chair position."), ¶ 64 ("Dean Sakr told Dr. Berry that he would instead be appointing Dr. David Bryant to the permanent Chair position.").) For that reason, Wilkerson-Uddyback asserts that Berry failed to allege that she was a decisionmaker or made the decision who to hire for the Department Chair position. (*Id.* at PageID.92.)

Wilkerson-Uddyback further argues that lumping her together with Sakr as a decisionmaker is improper and grounds for dismissal. (*Id.* at PageID.93 (citing *Reilly v. Vadlamudi*, 680 F.3d 617, 626 (6th Cir. 2012) ("A plaintiff must state a plausible constitutional violation against each individual defendant – the collective acts of defendants cannot be ascribed to each individual defendant."); *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008); *Courser v. Michigan House of Representatives*, 404 F. Supp. 3d 1125, 1140 (W.D. Mich. 2019), *aff'd* 831 F. App'x 161 (6th Cir. 2020)).)

The Court finds otherwise. Berry has adequately pleaded that Wilkerson-Uddyback was a driving force behind the decision to not hire Berry for the permanent Department Chair position, such that Sakr was but a conduit of her prejudice. *Yerkes v. Ohio State Highway Patrol*, 455 F. Supp. 3d 523, 546 (S.D. Ohio 2020) (citing *Paterek v. Village of Armada*, 801 F.3d 630, 651 (6th Cir. 2015) ("even if the Individual Defendants could show that they were not directly involved in the investigation or decisions about which Plaintiff complains, they could still be liable if Plaintiff could show that the decision makers were a conduit of the Individual Defendants' prejudice.")).

The Court finds that Berry's complaint can support a "cat's paw"

theory, described by the Sixth Circuit as follows:

> "In the employment discrimination context, 'cat's paw' refers
> to a situation in which a biased subordinate, who lacks
> decisionmaking power, uses the formal decisionmaker as a
> dupe in a deliberate scheme to trigger a discriminatory
> employment action." *EEOC v. BCI Coca–Cola Bottling Co.,*
> 450 F.3d 476, 484 (10th Cir.2006), *cert. dismissed,* 549 U.S.
> 1334, 127 S.Ct. 1931, 167 L.Ed.2d 583 (2007); *see also*
> *Arendale v. City of Memphis,* 519 F.3d 587, 604 n. 13 (6th
> Cir.2008) ("When an adverse hiring decision is made by a
> supervisor who lacks impermissible bias, but that supervisor
> was influenced by another individual who was motivated by
> such bias, this Court has held that the employer may be held
> liable under a 'rubber-stamp' or 'cat's paw' theory of
> liability.").[]
>
> Under this theory, the subordinate, not the nominal
> decisionmaker, is the driving force behind the employment
> action. When a decisionmaker acts in accordance with a
> retaliator's bias "without [him]self evaluating the employee's
> situation," the retaliator "clearly causes the tangible
> employment action, regardless of which individual actually"
> enforces the adverse transfer or termination. *Llampallas v.*
> *Mini–Circuits, Lab, Inc.,* 163 F.3d 1236, 1249 (11th Cir.1998)
> (citations omitted). "In effect, the [retaliator] is the
> decisionmaker, and the titular 'decisionmaker' is a mere
> conduit for the [retaliator's] discriminatory animus." *Id.*
> (emphasis in original). Imposing liability on the employer in
> this context is in accord with the agency principles and
> policies underlying Title VII. *BCI Coca–Cola,* 450 F.3d at 485–
> 86.

*Roberts v. Principi*, 283 F. App'x 325, 333 (6th Cir. 2008) (footnote

omitted). As Berry alleged in the six instances of conduct cited above,

14

Wilkerson-Uddyback's actions immediately followed and generally stemmed from Berry's noticed desire to address within the Department, specifically with residents, the issue of implicit bias in healthcare settings and the need for advocacy of Black patients.

If admissible evidence is produced, those six allegations could support a finding that Wilkerson-Uddyback attempted to orchestrate Sakr's decision regarding who would be the permanent Department Chair. The following allegations, in particular, support the cat's-paw theory: (a) Schweitzer canceled Berry's meeting at the request of Wilkerson-Uddyback; (b) Wilkerson-Uddyback pushed for Berry's removal as Interim Chair; (c) she sought to bar Berry from having contact with residents; and (d)she stated that she would not work with Berry. The Court therefore finds that such allegations support claims of unconstitutional conduct[2] (as well as claims for race discrimination and retaliation).

---

[2] Wilkerson-Uddyback has not specifically argued that Berry failed to allege the substantive deprivation of a right secured by the United States Constitution or the laws of the United States, so the Court does not address that issue in this Order. After a cursory review of the pleadings and briefs, the Court finds that Berry has sufficiently alleged the substantive deprivation element.

For the reasons set forth above, the Court finds that, with respect to his Equal Protection claim, Berry has pleaded allegations sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555. Accordingly, the motion to dismiss is **DENIED** as to Count II.

## B.   Counts III and IV – race discrimination and retaliation under ELCRA

The thrust of Wilkerson-Uddyback's arguments with respect to Counts III and IV generally are the same and largely mirror her arguments regarding Count II. (*See* ECF No. 11, PageID.94 (Berry's "failure to plead a salient relationship between Wilkerson-Uddyback and WSU Medicine, coupled with his admission that she did make the decision at issue, likewise dooms Plaintiff's discrimination (Count III) and retaliation (Count IV) claims under the ELCRA.").)

With respect to the two ELCRA claims, Wilkerson-Uddyback argues that she "was not and did not become an agent of" SOM (ECF No. 11, PageID.95, 97 (citing *Kubik v. CMU Bd. of Trustees*, 221 F. Supp. 3d 885, 903–904 (E.D. Mich. 2016)), nor was she a decisionmaker (because Sakr was the decisionmaker). For the same reasons that Wilkerson-Uddyback may be a state actor for purposes of the § 1983 claim (i.e., the allegations that she was a member of the faculty and jointly employed by

16

WSU and the DMC, as well as the six Wilkerson-Uddyback actions identified by the Court that may be attributable to WSU), Michigan courts have recognized that "individuals may be held liable under the ELCRA's broad umbrella." *Elezovic v. Ford Motor Co.*, 472 Mich. 408, 422 (2005); *Hall v. State Farm Ins. Co.*, 18 F. Supp. 2d 751, 764 (E.D. Mich. 1998), *aff'd* 1 F. App'x 438 (6th Cir. 2001) (rejecting summary judgment motion based on argument that "individual liability is unavailable under the ELCRA"); *Jenkins v. SE Mich. Chapter, Am. Red Cross*, 141 Mich. App. 785, 799 (1985) (motion to dismiss denied as to individual defendants alleged to be agents because they were responsible for making personnel decisions affecting the plaintiff).

The Court also finds that *Kubik* is distinguishable from the allegations in this case. There, the court was assessing the issue at the summary judgment stage, after discovery had been completed. That plaintiff therefore had to produce evidence to support agency status of the faculty member, and the plaintiff did not assert a cat's paw theory. For all those reasons, the Court concludes that Berry has adequately alleged that Wilkerson-Uddyback was an agent of the SOM (WSU) and a

decisionmaker with respect to the permanent Department Chair position.

Wilkerson-Uddyback's contention that Counts III and IV should be dismissed because Berry pleaded all "Defendants" as a group does not hold water. (ECF No. 11, PageID.96, 98.) For the reasons stated throughout this Order, Berry adequately pleaded in the Complaint that Wilkerson-Uddyback's actions were consistent with the allegations in Counts III and IV, even if she is not named individually in those counts.

As to Count III, Wilkerson-Uddyback also argues that Berry has not alleged that Wilkerson-Uddyback "said or did anything whatsoever as a result of [Berry's] race" that would support a claim for race discrimination. (ECF No. 11, PageID.96.) Wilkerson-Uddyback argues, and Berry does not dispute, that there are no allegations of direct evidence of race discrimination in this case. In the absence of direct evidence of race discrimination, a prima facie ELCRA race discrimination claim must be established based on indirect (circumstantial) evidence. *Hazle v. Ford Motor Co.*, 464 Mich. 456, 521 (2001).

In an action alleging race discrimination based on indirect evidence, the Michigan Supreme Court directs lower courts to apply the *McDonnell*

18

*Douglas*[3] framework. *Id.* at 520–521. Under this framework, to establish a prima facie case of discrimination based on failure to hire, a plaintiff must show that: (1) he belonged to a protected class; (2) he applied and was qualified for the job; (3) despite his qualifications, he was rejected; and (4) the position remained opened or another applicant with similar qualifications and not a member of the plaintiff's protected class was hired. *See, e.g., Williams v. Hevi-Duty Elec. Co.*, 819 F.2d 620, 629-30 (6th Cir. 1987).

Berry has alleged that he is a member of a protected class as he is Black. (ECF No. 1, PageID.17 at ¶ 88.) He alleges that he applied for the permanent Department Chair position. (*Id.* at PageID.13 at ¶¶ 58, 60.) He states that he was qualified for the position of permanent Department Chair, and he cites his qualifications, including that he had been interim Department Chair. (*See id.* at PageID.17 at ¶ 89; *see also id.* at PageID.4–6 at ¶14–17.)

Berry has alleged that although he was qualified, he was denied the permanent Department Chair position. (*Id.* at PageID.2 at ¶¶ 1, 3; *id.* at

---

[3] **Error! Main Document Only.***McDonnell Douglas Corp. v. Green*, 411 US. 792 (1973).

PageID.13–14 at ¶¶ 61, 64.) Finally, Berry alleged that Dr. David Bryant, who is not Black, was appointed to the permanent Department Chair position, even though Bryant was less qualified, had less experience as Chair, less research experience, and less leadership experience than Berry, and Bryant was only an Associate Professor, not a Full Professor like Berry. (*Id.* at PageID.14 at ¶¶ 64–70.) For all these reasons, the Court finds that Berry has adequately alleged a claim under ELCRA for failure to hire based on race discrimination.

Finally, Wilkerson-Uddyback argues that Berry has not alleged with specificity what protected activity forms the basis for his retaliation claim in Count IV. She contends that raising the issue of implicit bias within the patient population is not a protected activity under ELCRA, and Berry otherwise alleges only generalized and vague activities. (ECF No. 11, PageID.98.)

The Court finds that Wilkerson-Uddyback ignores the factual allegations in the complaint regarding protected activity, which was not limited to raising the issue of implicit bias within the patient population. Implicit bias simply means "is a negative attitude, of which one is not consciously aware, against a specific social group." *See* American

Psychological Association, https://www.apa.org/topics/implicit-bias (last visited March 18, 2024). As such, implicit bias can take the form of many different kinds (e.g., gender, age, race, ethnicity, sexual orientation, etc.).

Here, Berry specifically alleges that he complained about race discrimination against Black patients. (ECF No. 1, PageID.18 at ¶ 97 ("Plaintiff engaged in protected activity including, but not limited to, raising concerns of discrimination in the form of bias against Black patients by non-Black resident and physicians within University programs.").) The Court therefore finds that Berry has sufficiently alleged an actionable claim for retaliation against engaging in protected activity.

For the foregoing reasons, the Court **DENIES** the motion to dismiss as to Counts III and IV.

## V.   CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Wilkerson-Uddyback's motion to dismiss (ECF No. 11) is **DENIED**.

**SO ORDERED.**

Date: March 18, 2024                  **s/Jonathan J.C. Grey**
                                                 Hon. Jonathan J.C. Grey
                                                 United States District Judge

21

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 18, 2024.

<u>s/ **S. Osorio**</u>
Sandra Osorio
Case Manager