## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DR. STANLEY M. BERRY,

     Plaintiff,

v.

BOARD OF GOVERNORS OF
WAYNE STATE UNIVERSITY,
DR. SATINDER KAUR, in her
Individual capacity, DR. PATRICIA
WILKERSON-UDDYBACK, in her
Individual capacity, and DR. WAEL
SAKR, in his individual and official
Capacities,

     Defendants.

_____/

Case No. 23-cv-10981-JJCG-KGA

Hon. Jonathan J.C. Grey

Magistrate Kimberly B. Altman

## DEFENDANT DR. PATRICIA WILKERSON-UDDYBACK'S
## ANSWER TO PLAINTIFF'S COMPLAINT AND
## AFFIRMATIVE DEFENSES

Defendant Dr. Patricia Wilkerson-Uddyback ("Defendant" or "Dr. Wilkerson-Uddyback"), through her counsel Hickey Hauck Bishoff Jeffers & Seabolt, PLLC, states her Answer to Complaint as follows:

## INTRODUCTION

1.    This lawsuit arises out of Wayne State University's retaliatory failure to hire Dr. Stanley M. Berry, then-Interim Chair of the Department of Obstetrics and Gynecology, as permanent Chair after Dr. Berry raised the very serious issue of bias against Black patients in healthcare.

**ANSWER**:  Defendant lacks knowledge of what Plaintiff's lawsuit "arises out of" but denies as untrue that she was responsible for the alleged underlying acts in paragraph 1 of Plaintiff's Complaint.

2.     Defendant Dr. Wael Sakr, Dean of the University's School of Medicine, told Dr. Berry that his colleagues "don't love [him]" because of his outspoken determination that the Department address the issue to prevent racial disparities in maternal and fetal deaths in WSU's residency program.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2 of Plaintiff's Complaint.

3.     Dr. Sakr then hired another candidate, who is non-Black and objectively less qualified than Dr. Berry, who is Black, for the permanent Chair position, despite confiding in Dr. Berry that the other candidate was "less than ideal."

**ANSWER:** Defendant admits only to knowledge that Dr. Berry was not selected by WSU, and otherwise denies the allegations in paragraph 3 of Plaintiff's Complaint as untrue.

**PARTIES, JURISDICTION, AND VENUE**

4.     Plaintiff, Dr. Stanley M. Berry ("Dr. Berry"), is a resident of the Eastern District of Michigan and a current employee of Wayne State University's School of Medicine.

**ANSWER**: Defendant, upon information and belief, admits the allegations in

paragraph 4 of Plaintiff's Complaint.

5.      Wayne  State  University ("WSU") is an institution of higher education created by the Michigan Constitution. M.C.L. § 390.641.

**ANSWER**: The allegations are not directed at Defendant, and Defendant is not required to respond to the allegations in paragraph 5 of Plaintiff's Complaint as they set forth conclusions of law.

6. Defendant, the Board of Governors of Wayne State University, is the corporate body responsible for managing Wayne State University's affairs and property and the body capable of suing and being sued on WSU's behalf. M.C.L. §390.641.

**ANSWER**: The allegations are not directed at Defendant, and Defendant is not required to respond to the allegations in paragraph 6 of Plaintiff's Complaint as they set forth conclusions of law.

7.      Defendant, Dr.  Wael  Sakr, is  the  Dean  of  WSU's  School  of Medicine. He is sued in his official and individual capacities.

**ANSWER**: Defendant admits only that Dr. Sakr was the Dean of WSU's School of Medicine, but neither admits nor denies the remaining allegations in paragraph 7 of Plaintiff's Complaint as she lacks sufficient knowledge therein.

8.      Defendant, Dr. Satinder Kaur, is an Assistant Professor and the Director of WSU School of Medicine's Residency Program, which is jointly operated by

WSU and the Detroit Medical Center (DMC). She is sued in her individual capacity.

**ANSWER**: Defendant neither admits nor denies the allegations in paragraph 8 of Plaintiff's Complaint as she lacks sufficient knowledge therein.

9.     Defendant, Dr. Patricia Wilkerson-Uddyback, is the Vice President of Academic & Community Affairs at the Detroit Medical Center and, at all relevant times, was a faculty member at Wayne State University. On information and belief, in this role, Dr. Wilkerson-Uddyback was jointly employed by the Detroit Medical Center and Wayne State University. She is sued in her individual capacity.

**ANSWER**: Defendant admits only that she was a former employee of the Detroit Medical Center and was the Vice President of Academic & Community Affairs until 2023. Defendant further admits that Plaintiff has purported to sue her in her individual capacity. Defendant denies as untrue the remaining allegations in paragraph 9.

10.     This Court has general federal question jurisdiction pursuant to 28 U.S.C. § 1331, Title VI of the Civil Rights Act of 1964, and 42 U.S.C. 1983.

**ANSWER**: Defendant is not required to respond to the allegations in paragraph 10 of Plaintiff's Complaint as they set forth conclusions of law.

11.     This Court has supplemental jurisdiction of Plaintiff's state law claims pursuant to 28 U.S.C.A. § 1367.

**ANSWER**: Defendant is not required to respond to the allegations in paragraph 11

of Plaintiff's Complaint as they set forth conclusions of law.

12.    Venue is proper in this Court because Defendants obligated themselves to Plaintiff within the Eastern District of Michigan, the University is located within the Eastern District of Michigan, Plaintiff resides within the Eastern District of Michigan, and, upon information and belief, Defendants reside within the Eastern District of Michigan.

**ANSWER**: In response to the allegation in paragraph 12 of its Complaint, Defendant admits that the events alleged to have been committed allegedly occurred in the Eastern District of Michigan, but specifically denies as untrue that Defendant engaged in any violation of laws alleged by Plaintiff, or that Plaintiff suffered any injury for which Defendants are liable.

13.    Plaintiff has timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission and will amend this Complaint to include additional claims pursuant to Title VII of the Civil Rights Act of 1964 upon receipt of his notice of right to sue.

**ANSWER:** Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 13 of Plaintiff's Complaint.

## STATEMENT OF FACTS

### Dr. Stanley M. Berry's Background

14.    Plaintiff, Dr. Stanley M. Berry, has been a member of Wayne State

University's faculty between 1988-2001, and then again from 2005 to the present.

**ANSWER**: Defendant admits that Dr. Berry was a faculty member of WSU, but lacks knowledge of the exact years and therefore denies the remainder of the allegations in paragraph 14 of Plaintiff's Complaint.

15.    Dr. Berry's research interests include high-risk obstetrics and prenatal diagnosis and therapy, concentrating on the use of fetal blood sampling to study fetal physiology.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 15 of Plaintiff's Complaint.

16.    Dr. Berry's extensive list of accomplishments and experience in his field includes:

- The Willaford Leach/Armand Headee Professor of Obstetrics and Gynecology at Emory University;

- Chief of Service at Emory Crawford Long Hospital;

- Research project and educational mentor for the Detroit Medical Center/Wayne State University School of Medicine Maternal-Fetal Medicine Fellowship and Training Program;

- Administrator and clinician for the Center for Advanced Obstetrical Care and Research of the Perinatology Research Branch of the Eunice Kennedy Shriver National Institute for Child Health and Human Development at WSU;

- Medical director of Women's Services and Quality Improvement for Meridian Health Plan;

- Corporate Chair of Department of Obstetrics and Gynecology for William Beaumont Hospitals;

- Associate Chair of Obstetrical Services at WSU School of Medicine/Hutzel Hospital;

- Vice Chief of Obstetrics and Gynecology for WSU School of Medicine/Hutzel Hospital;

- Director of Maternal/Fetal Medicine Fellowship Program at WSU School of Medicine/Hutzel Hospital;

- Project Site Manager at the Perinatology Research Branch;

- National Chair of Student National Medical Association;

- Examiner for American Board of Obstetrics and Gynecology;

- Fellow Emeritus of American College of Obstetrics and Gynecology;

- Diplomate of National Board of Medical Examiners;

- Recipient of Central Prize and Certificate of Merit Award from Central Association of Obstetricians and Gynecologists;

- Recipient of President's Presenter's Award from the Society of Gynecologic Investigation Scientific Program Committee;

- Recipient of Outstanding Junior Faculty Award from WSU Department of Obstetrics and Gynecology; and

- 2020 TIME Magazine Coronavirus Hero.

**ANSWER:** Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 16 of Plaintiff's Complaint.

17.    On January 25, 2021, Dr. Berry was appointed to serve as the Interim

Chair and Frank P. Iacobell Professor of Wayne State University's Department of Obstetrics and Gynecology.

**ANSWER**: Defendant admits that Dr. Berry was appointed to serve at the Interim Chair, but lacks knowledge of the exact date in the allegations in paragraph 17 of Plaintiff's Complaint.

18.     Dr. Berry assumed his new role on March 15, 2021.

**ANSWER**:  Defendant lacks knowledge and information sufficient to admit or deny the allegations in paragraph 18 of Plaintiff's Complaint.

19.     Dr. Berry appointed his colleague, Dr. Lanetta Coleman, to serve as Executive Vice Chair of the Department of Obstetrics and Gynecology.

**ANSWER**: Defendant admits that Plaintiff sought to appoint Dr. Coleman to a Vice Chair position but denies the remaining allegations in paragraph 19 of Plaintiff's Complaint in the manner and form alleged.

20.     Dr. Coleman was the first woman to be named Chief of Obstetrics and Gynecology at DMC Sinai-Grace Hospital.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 20 of Plaintiff's Complaint.

21.     Dr. Berry is Black/African-American.

**ANSWER**: Defendant admits the allegations in paragraph 21 of Plaintiff's Complaint.

22.     Dr. Coleman is Black/African-American.

**ANSWER**: Defendant admits the allegations in paragraph 22 of Plaintiff's Complaint.

### Dr. Berry Raises Issue of Implicit Bias and Advocates for Black Patients

23.     On January 14, 2022, Dr. Coleman reported a concern regarding a resident interaction with a Black patient at Sinai Grace to Dr. Satinder Kaur, Assistant Professor and Director of the School of Medicine's Residency Program, and Dr. Berry.

**ANSWER**: Defendant denies that Dr. Kaur was a Director of the "School of Medicine's Residency Program" as the OBGYN residency program is a DMC program. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

24.     Dr. Coleman wrote in an email:

> There are many concerns regarding this patient's experience and the level of quality and care that she received… There is a large volume of information and studies available regarding pain management bias and inherent bias on labor and delivery. This patient interaction provides an opportunity to learn, teach, and be aware of how unrecognized bias can adversely affect patient care and clinical outcomes. Perhaps we can provide a training module on pain management in the antepartum patient.

**ANSWER**: Defendant lacks knowledge or information sufficient to form a belief as to the truth the allegations in paragraph 24 of Plaintiff's Complaint.

25.     Dr. Coleman was referring to the many studies and resources addressing

7

unconscious bias and racial disparities in healthcare, particularly maternal and infant health.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 25 of Plaintiff's Complaint.

26.     For example, the Centers for Disease Control and Prevention has noted that Black women are three times more likely to die from a pregnancy- related cause than non-Black women, and has established Black Maternal Health Week to bring attention and action in improving Black maternal health.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 26 of Plaintiff's Complaint.

27.     According to a 2016 study published in the Proceedings of the National Academies of Science, a shocking *half* of white medical trainees held one or more false beliefs about Black patients' experiences of pain. 40% endorsed the belief that Black people have "thicker skin". Trainees who believe that Black patients are less sensitive to pain than non-Black patients are less likely to treat Black patients' pain appropriately. A "meta-analysis" of 20 years of studies found that Black patients were 22% less likely than white patients to receive pain medication at all.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 27 of Plaintiff's Complaint.

28.     In short, Dr. Coleman's concerns were well-founded and legitimate.

8

**ANSWER**: Defendant denies the allegations in paragraph 28 of Plaintiff's Complaint as untrue.

29.    These issues had also arisen locally, and so Dr. Coleman and Dr. Berry were both rightfully concerned about the possibility of another disastrous outcome in this case. Importantly, the patient at issue had a history of preterm birth, which is the highest risk factor for delivering another premature baby.

**ANSWER**: Defendant lacks knowledge of Dr. Coleman and Dr. Berry's concerns and lacks knowledge of the patient's medical history but denies the remaining allegations in paragraph 29 in the manner and form alleged.

30.    Dr. Kaur met with the resident and responded to Dr. Coleman and Dr. Berry.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 30 of Plaintiff's Complaint.

31.    After reading Dr. Kaur's response, Dr. Berry was left with the impression that Dr. Kaur was not taking Dr. Coleman's concerns as seriously as the matter necessitated.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 31 of Plaintiff's Complaint.

32.    On January 23, 2022, Dr. Berry asked Dr. Kaur to address the issue of implicit bias in healthcare and communicate to the residents specifically that:

It is not acceptable to send a pregnant woman in the third trimester who is complaining of extreme pain home [because] 1. Sending a patient in this condition home does not comport with the humane/compassionate practice of medicine. 2. Sending a patient home in this circumstance [severe pain in third trimester of pregnancy] does not comport with the safe practice of medicine because there is always a chance that this woman may have been in preterm labor.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 32 of Plaintiff's Complaint.

33.     The following day, Dr. Kaur sent all of the Obstetrics & Gynecology residents a link to a presentation entitled "It Starts With You: Examining Implicit Bias in Healthcare Settings."

**ANSWER**: Defendant admits that Plaintiff sent residents materials but is without sufficient information or knowledge to either admit or deny the specific allegations in paragraph 33 of Plaintiff's Complaint.

34.     However, Dr. Kaur's message to residents did not address the specific issues that Dr. Berry had raised regarding the treatment of Black patients reporting pain during pregnancy.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 34 of Plaintiff's Complaint.

35.     In an email to Dr. Kaur and Dr. Coleman, Dr. Berry reiterated the importance of sending the residents a memorandum "outlining the negatives of

sending pregnant women home who are in pain… Specifically, this communication must highlight the lack of compassion and lack of patient safety such actions represent. The memo must mention how inherent bias factors into such decisions."

**ANSWER**:  Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 35 of Plaintiff's Complaint.

36.    To address these issues, on January 26, 2022, Dr. Berry sent a memorandum with the topic "Implicit Bias" to the Department of OB/GYN Trainees, Faculty, and Private Attendings.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 36 of Plaintiff's Complaint.

37.    Dr. Berry's memorandum stated in part:

> This case is important because it is an example of how we need to improve our care of pregnant patients across our system. Another aspect of this case that is important to note is that the patient in this case was an African-American woman, and residents, fellows, and attendings need to be aware that the possibility of implicit bias may exist in these situations regardless of the race or ethnicity of the provider. The decision-making on the part of the resident in this case is an example of care that should not occur in our program or our institution regardless of whether implicit bias was a factor. Please be mindful of this case when confronted with a patient who has a similar clinical presentation regardless of the patients' race or ethnicity. As for the possibility of implicit bias, all of us need to be aware that we are capable of such bias, and the only way to eliminate such prejudices from our practice is to continually be aware that we may harbor them.

**ANSWER**: Defendant is without sufficient information or knowledge to either

admit or deny the allegations in paragraph 37 of Plaintiff's Complaint.

38.     In a follow-up email, Dr. Berry invited the department to discuss the

issues at a meeting to take place on January 27, 2022, and noted:

> In my 38 years of working with and teaching trainees, I understand that mistakes are made everyday by everybody, and when these mistakes pose a real danger to patients, they need to be discussed openly, honestly, and in a timely manner. Given the fact that our hospital is currently the object of a lawsuit involving a case very similar to the one referred to in my memorandum, there was an urgency to bring this case to light in a way that reached as many providers as possible, as quickly as possible… Had this patient been discharged and then delivered a premature infant outside of the hospital, it could have been a disaster… I am not willing to discuss this case only in the context of implicit bias when the possible medical consequences to this patient and others are so astronomically grave…
>
> Calling attention to this matter is my responsibility as Chari [sic] of this Department to publicly raise issues like this, and I am disappointed that some of you consider my urgent effort to end this substandard medical practice in poor taste. The best way to care for a particularly vulnerable community is to consistently deliver the best medical care possible and that is the sole objective of my communication…"

**ANSWER**: Defendant is without sufficient information or knowledge to either

admit or deny the allegations in paragraph 38 of Plaintiff's Complaint.

### Wayne State University Administrators and Faculty Lash Out at Dr. Berry

39.     Then-Dean of the Wayne State University School of Medicine, Dr.

Mark Schweitzer, canceled the meeting Dr. Berry had scheduled.

**ANSWER**:  Defendant admits only that the meeting was canceled.

40.     On information and belief, Dr. Schweitzer canceled Dr. Berry's meeting at the request of Dr. Patricia Wilkerson-Uddyback, the Detroit Medical Center Graduate Medical Education Department's Vice President of Academic & Community Affairs.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 40 of Plaintiff's Complaint concerning Dr. Schweitzer's motives and actions

41.     In lieu of Dr. Berry's meeting, the Department held a separate meeting on January 27, 2022, spearheaded by Dr. Wilkerson-Uddyback and Dr. Kaur.

**ANSWER**: Defendant denies that she and Dr. Kaur "spearheaded" the meeting, admits that she attended a meeting during this general time period, but otherwise is without sufficient information or knowledge to either admit or deny the allegations in paragraph 41 of Plaintiff's Complaint.

42.     Dr. Berry and Dr. Coleman were not invited.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 42 of Plaintiff's Complaint.

43.     At this meeting, Dr. Wilkerson-Uddyback and Dr. Kaur referred to Dr. Berry (and Dr. Coleman) as "bad apples"; stated that they would not allow them to "spoil the bunch"; referenced Dr. Berry's age in a negative light; hinted that they intended to complain about Dr. Berry and Dr. Coleman to the people in charge of

faculty hiring and firing decisions; stated that Dr. Coleman had a "history of hostility"; and implied that residents shouldn't have to work with Dr. Coleman.

**ANSWER**: Defendant denies the allegations in paragraph 43 of Plaintiff's Complaint.

44.     Also on January 27, 2022, Dr. Kaur sent out a survey to all of the residents, stating: "We are collecting information about residents' preference with regard to working with Dr. Lanetta Coleman. Please select one of the choices below."

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 44 of Plaintiff's Complaint.

45.     The only two choices provided in this survey were "I would prefer NOT to work with Dr. Coleman" and "I have no preference one way or the other."

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 45 of Plaintiff's Complaint.

46.     The survey did not allow residents a way to express anything positive about Dr. Coleman and was designed to solicit negative results.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 46 of Plaintiff's Complaint.

47.     Over the next few months, Dr. Kaur and Dr. Wilkerson-Uddyback continued to speak negatively about and solicit negative feedback regarding Dr. Berry's attempt to raise the serious issue of racial bias in maternal healthcare.

**ANSWER**: Defendant denies the allegations in paragraph 47 of Plaintiff's Complaint as untrue.

48.    Meanwhile, on March 1, 2022, Dr. Wael Sakr began to serve as interim Dean of the Wayne State University School of Medicine.

**ANSWER**: Defendant admits the allegations in paragraph 48 of Plaintiff's Complaint.

49.    Immediately after the new Dean began his position, Dean Sakr informed Dr. Berry that Dr. Wilkerson-Uddyback had requested a meeting to discuss her "concerns" about Dr. Berry's communications to the OB-GYN residency program.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 49 of Plaintiff's Complaint.

50.    Dr. Berry told Dean Sakr that Dr. Wilkerson-Uddyback likely wished to discuss his memoranda, and he forwarded Dean Sakr the memoranda and emails he had written to the department outlining the importance of preventing implicit bias from leading to disastrous medical outcomes for Black patients and babies.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 50 of Plaintiff's Complaint.

51.    On or about March 16, 2022, a colleague told Dr. Berry that Dr. Wilkerson-Uddyback was pushing for Dr. Berry's dismissal as Interim Chair because

of his actions described herein.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 51 of Plaintiff's Complaint.

52.     The colleague told Dr. Berry that Dr. Wilkerson-Uddyback had sent a written memorandum to the Dean that not only attempted to get Dr. Berry dismissed as Interim Chair of the Department, but to bar both Dr. Berry and Dr. Coleman from having any further contact with residents, an extreme and completely unnecessary course of action.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 52 of Plaintiff's Complaint.

53.     Dean Sakr told Dr. Berry that the controversy that arose out of his memoranda was "in the past".

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 53 of Plaintiff's Complaint.

54.     However, it was clearly not.

**ANSWER**: Defendant denies the allegations in paragraph 54 of Plaintiff's Complaint in the manner and form alleged.

55.     On March 23, 2022, Dean Sakr met with the full OB-GYN department.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 55 of Plaintiff's Complaint.

56.     Dr. Berry was present for the first half-hour of this meeting, but then left to allow the department to discuss the department without him present.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 56 of Plaintiff's Complaint.

### Defendant Promotes a Less Qualified, Non-Black Candidate to Department Chair Because of Dr. Berry's Race and Advocacy

57.     Meanwhile, Dr. Berry learned that Dean Sakr intended to begin searching for candidates for the permanent Department Chair position.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 57 of Plaintiff's Complaint.

58.     On April 22, 2022, Dr. Berry submitted his CV to Dr. Noreen Rossi, who was chairing the search committee for a permanent Chair of the OB-GYN Department, for consideration.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 58 of Plaintiff's Complaint.

59.     Dr. Rossi told Dr. Berry that the Dean's search was not currently active.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 59 of Plaintiff's Complaint.

60.     On June 2, 2022, after learning from a colleague, Dr. David Bryant, that he had applied for the position, Dr. Berry again expressed his interest in the position

and submitted his CV directly to Dean Sakr for consideration.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 60 of Plaintiff's Complaint.

61.    On July 6, 2022, Dean Sakr told Dr. Berry that he would not be considered for the permanent Chair position.

**ANSWER**:  Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 61 of Plaintiff's Complaint.

62.    Dean Sakr told Dr. Berry that their colleagues, including Dr. Kaur and Dr. Wilkerson-Uddyback, were not willing to work with him; on information and belief, because of his actions over the past six months in attempting to impress upon the Department the seriousness of implicit racial bias in maternal medicine.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 62 of Plaintiff's Complaint.

63.    Dean Sakr told Dr. Berry: "They don't love you, and I don't think they ever will."

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 63 of Plaintiff's Complaint.

64.    Dean Sakr told Dr. Berry that he would instead be appointing Dr. David Bryant to the permanent Chair position.

**ANSWER**: Defendant is without sufficient information or knowledge to either

18

admit or deny the allegations in paragraph 64 of Plaintiff's Complaint.

65.    Dr. Bryant was objectively less qualified than Dr. Berry for the permanent Chair position.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 65 of Plaintiff's Complaint.

66.    Dr. Bryant held the rank of Associate Professor, while Dr. Berry held the rank of Full Professor.

**ANSWER**:  Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 66 of Plaintiff's Complaint.

67.    As Interim Chair, Dr. Berry had the appropriate experience to lead the Department as Chair, while Dr. Bryant had no such experience.

**ANSWER**:     Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 67 of Plaintiff's Complaint.

68.    Dr. Bryant has significantly less research experience than Dr. Berry.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 68 of Plaintiff's Complaint.

69.    Dr. Bryant has significantly less leadership experience than Dr. Berry.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 69 of Plaintiff's Complaint.

70.    Dr. Bryant is not Black/African-American.

**ANSWER**: Defendant admits the allegations in paragraph 70 of Plaintiff's Complaint.

71.   Dean Sakr confided that his decision to appoint the other candidate was "not ideal," but that he felt he had little choice in the matter.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 71 of Plaintiff's Complaint.

72.   Dr. Bryant took over the permanent Chair position on or about August 25, 2022.

**ANSWER**: Defendant admits the allegations in paragraph 72 of Plaintiff's Complaint.

73.   Dr. Berry retained the lesser title of Project Site Manager of the Perinatology Research Branch of the Eunice Kennedy Shriver National Institute of Child Health and Human Development.

**ANSWER**:  Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 73 of Plaintiff's Complaint.

74.   The Perinatology Research Branch closed on January 31, 2023.

**ANSWER**:  Defendant admits the allegations in paragraph 74 of Plaintiff's Complaint.

75.   Dr. Berry now holds the lesser title of Professor of Obstetrics and

Gynecology.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 75 of Plaintiff's Complaint.

**COUNT I**
**Violation of Title VI of the Civil Rights Act of 1964**
*Against Defendant Board of Governors of Wayne State University*

76.    Plaintiff incorporates the preceding allegations as if fully restated herein.

**ANSWER**: Defendant incorporates by reference her responses to Paragraphs 1-75 of Plaintiff's Complaint as if fully set forth here.

77.    Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

**ANSWER**:  This claim is not directed at Defendant, and Defendant is not required to respond to the allegations in paragraph 77 of Plaintiff's Complaint as they set forth conclusions of law.

78.    As a public university, Defendant Board of Governors of Wayne State University received and continues to receive federal financial assistance.

**ANSWER**:  This claim is not directed at Defendant, and Defendant is not required to respond to the allegations in paragraph 78 of Plaintiff's Complaint as they set forth

conclusions of law.

79.     Defendant subjected Plaintiff to intentional discrimination, excluded him from participation in, and denied him the benefits offered by the WSU School of Medicine by their conduct described herein, including but not limited to denying Plaintiff the position of/promotion to Chair of the School of Medicine's Department of Obstetrics and Gynecology.

**ANSWER**: This claim is not directed at Defendant, and Defendant is not required to respond to the allegations in paragraph 79 of Plaintiff's Complaint as they set forth conclusions of law.

**COUNT II**
**Violation of the Equal Protection Clause of the**
**Fifth and Fourteenth Amendments to the U.S. Constitution 42 U.S.C. 1983**
*Against Defendants Sakr, Kaur, and Uddyback in their individual*
*capacities*

80.     Plaintiff incorporates the preceding allegations as if fully restated herein.

**ANSWER**: Defendant incorporates by reference her responses to Paragraphs 1-79 of Plaintiff's Complaint as if fully set forth here.

81.     The Equal Protection Clause of the Fourteenth Amendment to  the U.S. Constitution provides that "no state shall…deny to any person within its jurisdiction the equal protection of the laws."

**ANSWER**: Defendant admits only that Plaintiff has purported to quote a portion of

22

the relevant provision, and Defendant is not required to respond to the allegations in paragraph 81 of Plaintiff's Complaint as they set forth conclusions of law.

82.    42 U.S.C. § 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of law.

**ANSWER**: Defendant admits only that Plaintiff has purported to quote a portion of the relevant provision, and Defendant is not required to respond to the allegations in paragraph 82 of Plaintiff's Complaint as they set forth conclusions of law.

83.    Defendants Sakr, Kaur, and Wilkerson-Uddyback (the individual Defendants) acted under color of law when they engaged in the conduct described herein, including but not limited to discriminating and retaliating against Plaintiff and denying him the position of/promotion to Chair of the WSU School of Medicine's Department of Obstetrics and Gynecology.

**ANSWER**: Defendant denies the allegations in paragraph 83 of Plaintiff's Complaint as untrue.

84.    Defendants Sakr, Kaur, and Wilkerson-Uddyback violated Plaintiff's clearly established constitutional rights of which any reasonable person in  their position would have known; they are therefore not entitled to qualified immunity.

**ANSWER**: Defendant denies the allegations in paragraph 84 of Plaintiff's Complaint as untrue.

23

WHEREFORE, Defendant Dr. Wilkerson-Uddyback respectfully requests the Court to dismiss the claims against her with prejudice.

## COUNT III
### Race Discrimination in Violation of the Elliott-Larsen Civil Rights Act M.C.L. 37.2201 et seq.

85.    Plaintiff incorporates the preceding allegations as if fully restated herein.

**ANSWER**: Defendant incorporates by reference her responses to Paragraphs 1-84 of Plaintiff's Complaint as if fully set forth here.

86.    At all relevant times, Plaintiff was an employee and Defendants were employers as defined by the Elliott-Larsen Civil Rights Act, M.C.L. 37.2201 et seq.

**ANSWER**: Defendant denies the allegations as to her in paragraph 86 of Plaintiff's Complaint.

87.    The State of Michigan has waived its Eleventh Amendment sovereign immunity and consented for Defendant Board of Governors of Wayne State University, an arm of the State, to be sued under the Elliott-Larsen Civil Rights Act.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 87 of Plaintiff's Complaint.

88.    Plaintiff is a member of a protected class based on his race (Black).

**ANSWER**: Defendant is not required to respond to the allegations in paragraph 88 of Plaintiff's Complaint as they set forth conclusions of law.

89.     Plaintiff expressed interest in, applies for, and was qualified for the position of/promotion to permanent Chair of the WSU School of Medicine's Department of Obstetrics and Gynecology.

**ANSWER**: Defendant admits only that Plaintiff expressed interest in a Chair position but Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 89 of Plaintiff's Complaint.

90.     Defendants considered for and denied Plaintiff the position/promotion.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 90 of Plaintiff's Complaint.

91.     Defendants passed over Plaintiff for the position/promotion in favor of a less qualified candidate who was not a member of Plaintiff's protected class.

**ANSWER**: Defendant denies the allegations in paragraph 91 of Plaintiff's Complaint as untrue because she was not Plaintiff's employer, was not an agent of the other defendants, and was not a decision-maker.

92.     Defendants' actions were taken willfully.

**ANSWER**: Defendant denies the allegations in paragraph 92 of Plaintiff's Complaint as untrue.

93.     But for Plaintiff's race, Defendants would not have denied him the position/promotion.

**ANSWER**: Defendant denies the allegations in paragraph 93 of Plaintiff's

Complaint as untrue.

WHEREFORE, the Defendant Dr. Wilkerson-Uddyback respectfully requests the Court to dismiss the claims against her with prejudice.

## COUNT IV
### Retaliation in Violation of the Elliott-Larsen Civil Rights Act
### M.C.L. 37.2201 et seq.

94.    Plaintiff incorporates the preceding allegations as if fully restated herein.

**ANSWER**: Defendant incorporates by reference her responses to Paragraphs 1-93 of Plaintiff's Complaint as if fully set forth here.

95.    At all relevant times, Plaintiff was an employee and Defendants were employers defined by the Elliott-Larsen Civil Rights Act, M.C.L. 37.2201 *et seq.*

**ANSWER**: Defendant denies the allegations in paragraph 95 of Plaintiff's Complaint as untrue because she was not Plaintiff's employer, was not an agent of the other defendants, and was not a decision-maker.

96.    The State of Michigan has waived its Eleventh Amendment sovereign immunity and consented for Defendant Board of Governors of Wayne State University, an arm of the State, to be sued under the Elliott-Larsen Civil Rights Act.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 96 of Plaintiff's Complaint.

97.    Plaintiff engaged in protected activity including, but not limited to,

raising concerns of discrimination in the form of bias against Black patients by non-Black residents and physicians in University programs.

**ANSWER**: Defendant is without sufficient information or knowledge to either admit or deny the allegations in paragraph 97 of Plaintiff's Complaint.

98.   Defendants were aware of Plaintiff's protected activity.

**ANSWER**: Defendant denies the allegations in paragraph 98 of Plaintiff's Complaint as untrue.

99.   Defendants retaliated against Plaintiff for his protected activity by subjecting him to adverse employment actions including, but not limited to, denying him the position/promotion to Chair of the School of Medicine's Department of Obstetrics and Gynecology.

**ANSWER**: Defendant denies the allegations in paragraph 99 of Plaintiff's Complaint as untrue.

100.   Defendants' actions were taken willfully.

**ANSWER**: Defendant denies the allegations in paragraph 100 of Plaintiff's Complaint as untrue.

101.   But for Plaintiff's protected activity, Defendants would not have denied him the position/promotion.

**ANSWER**: Defendant denies the allegations in paragraph 101 of Plaintiff's Complaint as untrue.  Defendant was not Plaintiff's employer, was not an agent of

the other defendants, and was not a decision-maker.

WHEREFORE, the Defendant Dr. Wilkerson-Uddyback respectfully requests the Court to dismiss the claims against her with prejudice.

## DAMAGES

102.   As a direct and proximate result of Defendants' actions, Plaintiff has suffered damages, including but not limited to loss of income and earning capacity, impairment of his ability to work, emotional and physical distress, loss of reputation, humiliation and embarrassment, and will continue to suffer such damages in the future.

**ANSWER**: Defendant denies the allegations in paragraph 102 of Plaintiff's Complaint as untrue.

WHEREFORE, the Defendant Dr. Wilkerson-Uddyback respectfully requests the Court to dismiss the claims against Dr. Wilkerson-Uddyback with prejudice.

Respectfully submitted,

Dated: April 1, 2024

*/s/ Benjamin W. Jeffers*
Benjamin W. Jeffers (P57161)
Adam W. Winnie (P82820)
HICKEY HAUCK BISHOFF JEFFERS
& SEABOLT, PLLC
1 Woodward Avenue, Suite 2000
Detroit, MI 48226
313.964.8600
*bjeffers@hhbjs.com*
*awinnie@hhbjs.com*

28

## **AFFIRMATIVE DEFENSES**

Defendant submits the following as her Affirmative and Other Defenses to Plaintiff's Complaint.

1.     Plaintiff has failed to mitigate Plaintiff's alleged damages, if any.

2.     The Complaint fails, in whole or in part, including the nature of damages requested, to state claims upon which relief can be granted.

3.      Any claim for damages greater than any applicable statutory caps, including but not limited to the damage caps in 42 U.S.C. §1981a, are barred.

4.     Punitive and liquidated damages are not available under Michigan law for the claims Plaintiff asserts.

5.     Plaintiff's claims fail, in whole or in part, because Defendant was not Plaintiff's employer, was not an agent of the other defendants, and was not a decision-maker for the action alleged.

6.     Any actions taken by any defendant were not willful, made in bad faith, and were not made without a reasonable ground to believe they did not violate law.

7.     Any actions taken by any defendant were not engaged in with malice or with reckless indifference to any state or federally protected right.

8.     To the extent it may be determined that there was any discriminatory animus, the actions about which plaintiff complains would have been taken in any event for legitimate business reasons.

9.      Plaintiff's damages, if any, were not the result of acts or omissions by any defendant.

10.     Plaintiff's claims may be barred, in whole or in part, by the applicable statute of limitation period, contractual or otherwise.

11.     Plaintiff's claims in the Complaint may be barred, in whole or in part, by the doctrines of equitable, collateral, and/or judicial estoppel and/or res judicata.

12.     There is no individual liability under any state or federal constitutional claim.

13.     Plaintiff's claims are barred by the doctrines of unclean hands, waiver, and/or laches.

14.     Plaintiff's claims are barred in whole or in part by one of the affirmative defenses set forth in Fed. R. Civ. Pro. 8(c).

Defendant reserves the right to assert such further affirmative defenses as may become apparent during the course of discovery in this case.

WHEREFORE, Defendant respectfully requests that this Court dismiss Plaintiff's causes of action in total and that it award Defendant her costs and fees incurred in responding to this Complaint.

Respectfully submitted,

Dated: April 1, 2024

*/s/ Benjamin W. Jeffers*
Benjamin W. Jeffers (P57161)
Adam G. Winnie (P82820)
HICKEY HAUCK BISHOFF JEFFERS
& SEABOLT, PLLC
1 Woodward Avenue, Suite 2000
Detroit, MI 48226
313.964.8600
*bjeffers@hhbjs.com*
*awinnie@hhbjs.com*

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2024, my assistant filed the foregoing document with the Clerk of the Court using the United States Eastern District of Michigan e-filing system which will send notifications to all e-filing participants of record.

Dated:    April 1, 2024            By:  */s/ Benjamin W. Jeffers*
Benjamin W. Jeffers (P57161)