## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DR. STANLEY M. BERRY,

      Plaintiff,

v.

BOARD OF GOVERNORS OF
WAYNE STATE UNIVERSITY,
DR. SATINDER KAUR, in her
Individual capacity, DR. PATRICIA
WILKERSON-UDDYBACK, in her
Individual capacity, and DR. WAEL
SAKR, in his individual and official
Capacities,

      Defendants.

_____/

Case No. 23-cv-10981-JJCG-KGA

Hon. Jonathan J.C. Grey

Magistrate Kimberly B. Altman

**Oral Argument Requested**

## DEFENDANT DR. PATRICIA WILKERSON-UDDYBACK'S
## MOTION FOR SUMMARY JUDGMENT

Defendant Dr. Patricia Wilkerson-Uddyback ("Defendant" or "Dr. Wilkerson-Uddyback"), through her counsel Hickey Hauck Bishoff Jeffers & Seabolt, PLLC, and pursuant to Fed.R.Civ.P. 56, moves the Court for summary judgment on all claims in Plaintiff's Amended Complaint against her. In support of her Motion, Dr. Wilkerson-Uddyback relies upon her supporting brief.

In compliance with Local Rule 7.1(a), counsel for Dr. Wilkerson-Uddyback contacted Plaintiff's counsel for concurrence in the relief requested. On April 10, 2025, Plaintiff's counsel concurred that Counts V and VI apply to Defendant Board of Regents only and not Defendant. Thus, these claims should be dismissed with

prejudice.

WHEREFORE, Defendant Dr. Wilkerson-Uddyback respectfully requests the

Court grant summary judgment on all other claims against Dr. Wilkerson-Uddyback

with prejudice.

Respectfully submitted,

Dated: April 11, 2025

/s/ Benjamin W. Jeffers
Benjamin W. Jeffers (P57161)
HICKEY HAUCK BISHOFF JEFFERS
& SEABOLT, PLLC
1 Woodward Avenue, Suite 2000
Detroit, MI 48226
313.964.8600
bjeffers@hhbjs.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

DR. STANLEY M. BERRY,

      Plaintiff,

v.

BOARD OF GOVERNORS OF
WAYNE STATE UNIVERSITY,
DR. SATINDER KAUR, in her
Individual capacity, DR. PATRICIA
WILKERSON-UDDYBACK, in her
Individual capacity, and DR. WAEL
SAKR, in his individual and official
Capacities,

      Defendants.

_____/

Case No. 23-cv-10981-JJCG-KGA

Hon. Jonathan J.C. Grey

Magistrate Kimberly B. Altman

**Oral Argument Requested**

## DEFENDANT DR. PATRICIA WILKERSON-UDDYBACK'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES…………………………………………………...……iii

STATEMENT OF ISSUES PRESENTED………………………………………...v

STATEMENT OF CONTROLLING AUTHORITY……………………….…vi

I. INTRODUCTION………………………….…………………………………1

II. SUMMARY OF PLAINTIFF'S ALLEGATIONS…………………...……...2

III. STATEMENT OF MATERIAL FACTS………………………..…………..3

   A.  Plaintiff's January 2022 memo and email singled out a DMC resident physician who was caring for a DMC patient at a DMC hospital…………...3

   B.  Dr. Wilkerson-Uddyback became involved because she was a full-time DMC official responsible for overseeing the DMC residents and programs..6

      1.  The ACGME Requirements explicitly require Sponsoring Institutions to provide a non-toxic and professional working environment…………………………………………………...……….6

      2.  The manner in which Plaintiff communicated his opinions created anger among the residents, who felt that Plaintiff had unfairly called out one of their colleagues…………………………………………….……….6

      3.  Dr. Wilkerson-Uddyback's concerns were amplified because the DMC had just lost accreditation for a related fellowship program where Plaintiff was involved…………………………….……………...8

      4.  Dr. Wilkerson-Uddyback was a DMC representative who became involved due to her position…………………..……………………9

         a.  Dr. Wilkerson-Uddyback was a full-time employee of the DMC…………………………………………….…..……..9

         b.  Dr. Wilkerson-Uddyback's title of "Voluntary Faculty" member with WSUSOM changes nothing……………………….……..11

i

C. Dr. Wilkerson Uddyback's activities were not due to Plaintiff's race or the topic of implicit bias, and did not cause an employment-related consequence for Plaintiff………………………………………………………………………12

D. Plaintiff has admitted that expressing an opinion on whether a person should hold a particular job is a matter of freedom of speech……………………..16

IV. PLAINTIFF'S CLAIMS IN THE AMENDED COMPLAINT…..…………..17

V. SUMMARY JUDGMENT STANDARD……………...…………………...18

VI. ARGUMENT……..………………………………………………………...18

A. Each claim against Dr. Wilkerson-Uddyback is predicated on the unsupported assertion that she was an employee or agent of WSU………..19

B. The arguments in the WSU Defendants' Motion for Summary Judgment would apply to Dr. Wilkerson-Uddyback even if she was, in fact, a WSU employee or agent……………………………………………………….21

C. Plaintiff cannot meet his burden of linking the conduct of Dr. Wilkerson-Uddyback to an adverse employment outcome……………………………22

    1. The Permanent Chair Position……………………………………….23

    2. The Interim Chair Position………………………………………...24

VII. CONCLUSION……………..………………………………………...25

# INDEX OF AUTHORITIES

**Cases**

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ....................................18

*E.E.O.C. v. Skanska USA Bldg., Inc.*,
   550 F. App'x 253, 256 (6th Cir. 2013) ....................................................19

*Elezovic v. Bennett*,
   731 N.W.2d 452, 458 (Mich. App. 2007) ..................................................21

*Heyerman v. Cnty. of Calhoun*,
   680 F.3d 642, 647 (6th Cir. 2012) ........................................................22

*Howell v. Father Maloney's Boys' Haven, Inc.*,
   976 F.3d 750, 752 (6th Cir. 2020) ........................................................19

*Krohn v. Sedgwick James of Mich., Inc.*,
   624 N.W.2d 212, 217 (Mich. App. 2001) ..................................................24

*Kubik v. Central Michigan University Board of Trustees, et al.*,
   221 F. Supp. 3d 885, 903-04 (E.D. Mich. 2016) ..........................................21

*Martin v. Ind. Mich. Power Co.*,
   381 F.3d 574 (6th Cir. 2004) ............................................................18

*Misane v. City of Bangor*,
   2023 WL 2856692, at *10 (W.D. Mich., April 10, 2023) ..................................24

*Mitchell v. Washtenaw Cnty.*,
   No. 22-10224, 2022 WL 2716508 (E.D. Mich. July 13, 2022) ............................19

*Moore v. Philip Morris Cos.*,
   8 F.3d 335 (6th Cir. 1993) ..............................................................18

*Odigbo v. NW Airlines, Inc.*,
   8 F. Supp. 2d 660, 664 (E.D. Mich. 1998) ...............................................21

*Sami v. Detroit Med. Ctr.*,
   591 F. App'x 419, 423 (6th Cir. 2014) ..................................................24

*Sniecinski v. Blue Cross & Blue Shield of Michigan*,
   469 Mich. 124, 134–35, 666 N.W.2d 186, 193 (2003) ....................................23

*Terrance v. Northville Reg'l Psychiatric Hosp.*,
   286 F.3d 834, 842 (6th Cir. 2002) ........................................................................22

*West v. Gen. Motors Corp.*,
   469 Mich. 177, 186, 665 N.W.2d 468, 473 (2003) ..............................................22

**Rules**

Fed. R. Civ. P. 56 ....................................................................................................1

Fed. R. Civ. P. 56 (c) ............................................................................................18

Local Rule 7.1(a) .....................................................................................................1

Local Rule 7.1(d)(2) .............................................................................................. vii

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.      Whether the Court should grant summary judgment on Plaintiff's claims against Dr. Wilkerson-Uddyback where she was not employed by Wayne State University, did not act as its agent, and was not a decision-maker as to any alleged employment action?

Plaintiff's answer: "No"

Defendant's answer: "Yes"

2.      Whether the Court should grant summary judgment on Plaintiff's claims against Dr. Wilkerson-Uddyback on all the same grounds as those lodged by the Wayne State University co-defendants, including that Plaintiff did not even apply for the position purportedly at issue?

Plaintiff's answer: "No"

Defendant's answer: "Yes"

3.      Whether the Court should grant summary judgment on Plaintiff's claims against Dr. Wilkerson-Uddyback where there is no improper, causal connection between her conduct and WSU's decisions as to the position at issue?

Plaintiff's answer: "No"

Defendant's answer: "Yes"

## <u>STATEMENT OF CONTROLLING AUTHORITY</u>

Pursuant to Local Rule 7.1(d)(2), Defendant Wilkerson-Uddyback states that the following authorities are the controlling or most appropriate authorities for the relief requested by this Motion:

- 42 U.S.C. 1983;

- Elliott-Larsen Civil Rights Act, M.C.L 37.2201 et seq. ("ELCRA");

- *Howell v. Father Maloney's Boys' Haven, Inc.*, 976 F.3d 750, 752 (6th Cir. 2020); and

- *Kubik v. Central Michigan University Board of Trustees, et al.*, 221 F. Supp. 3d 885, 903-04 (E.D. Mich. 2016).

## I.   INTRODUCTION

This is an employment case regarding an internal leadership position at Wayne State University's School of Medicine ("WSUSOM"). The crux of the case concerns Plaintiff's contention that WSUSOM declined to offer him the permanent OB/GYN Chair position in 2022 because of his race and that he upset people through his efforts to raise awareness about "implicit bias" in the healthcare field via a January 2022 Memo (the "Memo"). Despite the fact that he did not even apply for the permanent Chair position, Plaintiff's Amended Complaint proffers Constitutional and statutory claims against Defendants because someone else was hired for this role.

Dr. Wilkerson-Uddyback has been named along with the WSU Defendants based on Plaintiff's allegation that she was "jointly" employed by the DMC and WSUSOM. (ECF No.20, PageID.206 at ¶9). She initially sought dismissal pursuant to Fed. R. Civ. P. 12(b)(6) given that the allegation was conclusory, but the Court denied the Motion, finding that the Complaint had sufficient allegations about her employment to allow the claims to proceed in discovery. 3/18/2023 Order (ECF No.15, PageID.145-146).

Now, with a fulsome factual record, it is abundantly clear that Plaintiff's foundational allegation as to her employment status is wrong. The record establishes that she was a full-time employee of Tenet Healthcare (DMC's ultimate parent), serving as the DMC's V.P. of Academic & Community Affairs and at all times acting

1

in that capacity. Even assuming, arguendo, that there is an issue of fact as to her employment status, Dr. Wilkerson-Uddyback is still entitled to summary judgment (a) for the reasons identified in WSU's Motion for Summary Judgment, and (b) because none of her actions caused an adverse employment outcome for Plaintiff.

## II.    SUMMARY OF PLAINTIFF'S ALLEGATIONS

A long-standing faculty member, Plaintiff was appointed in January 2021 to serve as the Interim Chair of WSU's Department of Obstetrics and Gynecology. (ECF No.20, PageID.209 at ¶¶18-19). A year into his appointment as Interim Chair, Plaintiff alleges he learned of a concern about an interaction between a DMC OB/GYN resident and a patient at DMC's Sinai Grace hospital that suggested the resident may have had "implicit bias" that impacted decision-making. (ECF No.20, PageID.210-212 at ¶¶24-36).

Plaintiff sent a Memo and an email to the entire WSU Department of OB/GYN in January 2022 about the incident and implicit bias and invited them to a meeting to discuss the topic. (ECF No.20, PageID.212-213 at ¶¶37-39). He claims that Defendants canceled the meeting and stymied his efforts, that Dr. Wilkerson-Uddyback and others sought to have him removed as Interim Chair, and that the backlash culminated in him not being appointed as the permanent Chair of WSUSOM's OB/GYN Department. (ECF No.20, PageID.214 at ¶¶40-44; 48-53). He has alleged that Dr. Wilkerson-Uddyback was an employee of WSUSOM, based

2

largely on the false assertion that WSU and the DMC jointly sponsored the residency programs, and that she held a title of "Voluntary" faculty member at WSUSOM.

## III.    STATEMENT OF MATERIAL FACTS

To avoid redundancy in relation to the WSU Defendant's Motion, Dr. Wilkerson-Uddyback focuses below on the facts specific to her. The following explains the DMC residency programs, the concerns that arose with DMC's residents, Dr. Wilkerson-Uddyback's position at the DMC, and her involvement on behalf of the DMC with the residents' reaction to the Memo.

### A.    Plaintiff's January 2022 memo and email singled out a DMC resident physician who was caring for a DMC patient at a DMC hospital.

1.    The DMC is one of the largest academic medical centers in the United States, with decades of experience providing graduate medical education to residents. Declaration of Dr. Patricia Wilkerson-Uddyback ("Decl. of W-U"), ¶3, **Ex. A**. It is a private, for-profit entity whose ultimate parent is Tenet Healthcare Corporation. *Id*. The DMC sponsors dozens of individual specialty programs and, in any given year, employs nearly 1,000 residents. *Id.* at ¶4. The DMC's Graduate Medical Education ("GME") Office provides the financial, operational, administrative, and clinical support for the residents and the residency programs. *Id.* The residents are employed pursuant to written agreements and paid by a DMC affiliate as W-2 employees. *Id*.

3

2.    The DMC GME Office also ensures that its programs meet the requirements of the Accreditation Council of Graduate Medical Education ("ACGME"), which is the body that sets requirements for GME programs throughout the United States. *See* ACGME Institutional Requirements ("ACGME Requirements"), **Ex. B**.

3.    Wayne State University is a public university and is not part of the DMC or Tenet. Decl. of W-U, ¶4, **Ex. A**. The DMC has written agreements with accredited medical schools like WSUSOM to provide faculty training for the residents in the DMC's clinical facilities and in accord with ACGME program requirements. *Id.*; *see also* Wilkerson-Uddyback dep. ("W-U dep."), p. 17 ln 24-25; p. 18 ln 1-4, **Ex. C**.

4.    WSUSOM does not employ or pay residents. *Id.* As noted by WSUSOM's former Dean, the DMC pays WSU "to help run the residency." Schweitzer dep., p. 41 ln 7-9, **Ex. D**. And as noted by the current WSUSOM Dean, he "doesn't have jurisdiction over residency programs." Sakr dep., p. 47 ln 17-18, **Ex. E**.

5.    Despite all of this, Plaintiff alleges that the OB/GYN residency program is a "jointly" sponsored program between the two institutions. Berry dep., p. 144 ln 3-8, **Ex. F**. His only proof is that he has observed nomenclature listing the program as the "Detroit Medical Center/Wayne State University Program" or the like on

ACGME letters and materials. *Id.,* p. 148 ln 2-22, **Ex. F**. (confirming he has no evidence other than seeing the "titling" on documents).

6.     His contention is wrong. The ACGME mandates that only **one** institution may serve as the "Sponsor." *See* ACGME Requirements, I.A.1, p. 2, **Ex. B**; *see also* Decl. of W-U, ¶5, **Ex. A**. Here, the DMC is the sole sponsor of the OB/GYN Residency Program. Decl. of W-U, ¶5, **Ex. A**. The reason for the titling was merely for external branding and identification purposes, given that the DMC has residency affiliations with schools other than WSUSOM. *Id.*

7.     WSUSOM leadership confirmed this in their depositions. Former Dean Schweitzer testified that there is "no such thing as jointly sponsored residencies. There is a sponsor, and that is the DMC." Schweitzer dep., p. 41 ln 3-6, **Ex. D**; Bryant dep., p. 115 ln 7-10, **Ex. G** (current OB/GYN Dept. Chair noting that the DMC is the entity "responsible for the residency program and for the well-being of the residents."); *see also* Sakr dep., p. 37 ln 22-25, **Ex. E** (the DMC "residencies").

8.     Plaintiff himself admitted that he had been told that the residents were DMC employees and that as Interim Chair, he could **not** set their schedules or access their personnel files at the DMC. Berry dep., p. 187 ln 17-24; p.189 ln 13-18; and p.191 ln 13-16, **Ex. F**.

9.     Based on the foregoing, it is undisputed that when Plaintiff sent his January 2022 Memo about an incident involving a resident, he was making

allegations against a DMC employee.

**B.    Dr. Wilkerson-Uddyback became involved because she was a full-time DMC official responsible for overseeing the DMC residents and programs.**

**1.    The ACGME Requirements explicitly require Sponsoring Institutions to provide a non-toxic and professional working environment.**

10.    To maintain accreditation, all Sponsoring Institutions must stay in "substantial compliance" with ACGME Requirements. ACGME Requirements, p. 2, Section I.A.2, **Ex. B**. As evident from even a cursory review, the Requirements are fulsome in mandating that residents must have a safe and professional place to work. *Id.* By way of example, Section II.C. mandates that programs provide opportunities for residents to have town halls or other platforms to meet and communicate issues and concerns; Section II.F. mandates that Sponsors "minimize" resident work that is extraneous to their ACGME program; and Section III has explicit requirements for the "Learning and Working Environment," including that residents must be supervised (III.B.4.) and the Sponsoring Institution must provide "**a professional, equitable, respectful and civil environment that is free from unprofessional behavior, including   discrimination, sexual and other forms of harassment, mistreatment, abuse . . .**" (III.B.6.d). *Id.* (emphasis added).

**2.    The manner in which Plaintiff communicated his opinions created anger among the residents, who felt that Plaintiff had unfairly called out one of their colleagues.**

11.    Plaintiff sent his implicit bias Memo in January 2022, and it impacted

6

the residents' work environment. Consider the following:

12.     Dr. David Bryant, the current Chair of the OB/GYN Department at WSUSOM, testified that the residents felt "targeted" by Plaintiff, which he said is a "professional red line that people don't cross." Bryant dep., p. 49 ln 9-12, **Ex. G**. He further testified that he was "taken aback by the tone" of Plaintiff's Memo (*Id.,* p. 41 ln 1-2), was "very concerned" about the reaction from faculty and residents, (*Id.,* p. 45 ln 24-25; p. 46 ln 1-2), and felt that the negative reaction to how Plaintiff went about this was "palpable." *Id.,* p. 47 ln 17-19.

13.     Dr. Mark Schweitzer, the former WSUSOM Dean, testified that the tone of the Memo created a lot of "tumult" in the Department. Schweitzer dep., p. 38 ln 21-24, **Ex. D**.

14.     Dr. Deslyn Hobson, the former WSUSOM assistant professor recalled that the issue was not the "substance" of Berry's memo, but that the memo and led to a situation where everyone learned who the resident was, and so people were upset about that. Hobson dep., p. 70 ln 5-6; p. 71 ln 4-12, **Ex. H**.

15.     Dr. Wilkerson-Uddyback had first-hand communication with residents and received numerous complaints from them. W-U dep., p. 43 ln 21-25; p. 44 ln 1-7, **Ex. C**. The concerns were not with the underlying topic of implicit bias, but "had everything to do with the methodology that [Plaintiff] used to discuss the implicit bias." *Id.*, p. 44 ln 8-12. In fact, when Dr. Wilkerson-Uddyback spoke with the

resident at issue, she was "in tears" and felt unfairly targeted and a victim of bias. *Id.*, p. 47 ln 24-25; p. 48 ln 1-17.

> **3.  Dr. Wilkerson-Uddyback's concerns were amplified because the DMC had just lost accreditation for a related fellowship program where Plaintiff was involved.**

16.   The DMC had concerns about Plaintiff's interactions with residents well before Plaintiff sent his January 2022 Memo. W-U dep., p. 61 ln 3-15, **Ex. C.**

17.   The DMC previously had a fellowship program within the overall OB/GYN program focused on Reproductive Endocrinology and Infertility ("REI Program"). In June 2021, ACGME withdrew accreditation for the REI Program due in part to resident complaints. W-U dep., p. 60 ln 21-25; p. 61 ln 1, **Ex. C**.

18.   Dr. Wilkerson-Uddyback testified that as to REI, there was "a lot of animosity between [Plaintiff] and the residents. I don't know why. They did not feel safe with him . . . they did not want to meet with him alone." *Id.*, p. 61 ln 3-15.

19.   Dr. Wilkerson-Uddyback explained that her primary institutional concern after Plaintiff sent the Memo was that residents would again "escalate this to ACGME . . . [t]hey were very, very angry." *Id.*, p. 45 ln 10-14. She was worried about negative feedback and a site visit from the ACGME. *Id.*, p. 45 ln 15-20. If the ACGME did another site visit, spoke with residents, and heard that Plaintiff was exhibiting behavior as had been the case with the REI Program, then the DMC could lose the OB/GYN program too. *Id.*, p. 52 ln 3-7; p. 55 ln 17-20.

20.     The current WSUSOM Dean corroborated this point, testifying that when Dr. Wilkerson-Uddyback met with him in March 2022, she expressed that the DMC was concerned that the issues involving Plaintiff presented another "risk for residency accreditation." Sakr dep., p. 38 ln 1-21, **Ex. E**. She told him the concerns were Plaintiff's communications with residents and his temperament. *Id*., p. 40 ln 16-25. Former Dean Schweitzer testified that the DMC was not happy with Plaintiff "from the beginning," even before the Memo, including when Plaintiff was the Interim Chair. Schweitzer dep., p. 50 ln 8-13; p. 53 ln 10-19, **Ex. D**.

### 4.     Dr. Wilkerson-Uddyback was a DMC representative who became involved due to her position.

#### a. Dr. Wilkerson-Uddyback was a full-time employee of the DMC.

21.     At the time the Memo was sent, she was V.P. of Academic and Community Affairs for the DMC. Wilkerson-Uddyback Curriculum Vitae ("W-U CV"), **Ex. I**. She had direct, day-to-day oversight over the DMC's GME operations, its dozens of residency programs, and its approximately 1,000 residents. W-U dep., p. 14 ln 1-21, **Ex. C**. This was a full-time, salaried position, and she reported directly to DMC leadership. Decl. of W-U, ¶7, **Ex. A**.

22.     Dr. Wilkerson-Uddyback is a proud alum of WSU and has the title of "Voluntary Faculty" member (explained below), but she has absolutely no employment or agency relationship with WSU. *Id.* She was not employed or paid by

9

WSU. *Id*. She had no decision-making authority on matters involving personnel and/or the operation of WSUSOM and did not have the authority to bind WSUSOM on contractual or other legal matters. *Id*. Conversely, WSUSOM did not direct or control her day-to-day activities at the DMC. *Id*.

23.  The Wayne State University Defendants confirm these undisputed facts. *See* WSU Defendants' Motion for Summary Judgment.

24.  Certainly, part of her DMC job duties involved meeting with the WSUSOM dean on institutional accreditation issues. W-U dep., p. 18 ln 11-15, **Ex. C**.  Former Dean Schweitzer testified that she was "a voice of the DMC." Schweitzer dep., p. 53 ln 10-14, **Ex. D**. Current Dean Sakr testified that his communications with her about the OB/GYN Department were "in her responsibility as the coordinator for residencies, for DMC residency." Sakr dep., p. 37 ln 22-25, **Ex. E**. In fact, she never had meetings with Wayne State faculty or the dean for any reason outside of her role as the DMC's V.P. of Academic and Community Affairs. W-U dep., p. 19 ln 24-25; p. 20 ln 1-4, **Ex. C**.

25.  Plaintiff himself has offered no proof to support his allegation that she was "jointly" employed by both DMC and WSU. (ECF No.20, PageID.206 at ¶9). He admitted no one told him she was an employee of WSU, never read any document that suggested she was an employee and does not have an understanding whether she is an employee of WSU. Berry dep., p. 170 ln 9-19, **Ex. F**.

26.     Conversely, he correctly testified that she was the V.P. for Academic and Community Affairs at the DMC, and that her job was to oversee the GME programs. *Id.*, p. 153 ln 21-25; p. 154 ln 1-3. He further admitted learning that she reported to the DMC's CEO and had her office at the DMC. *Id.*, p. 154 ln 4-15.

27.     Plaintiff answered either "**no**" or "**I don't know**" to questions asking if Dr. Wilkerson-Uddyback had an office at WSU (*Id.,* p. 155 ln 1-2), whether anyone at WSU had the right to monitor her activities (*Id.,* p. 155 ln 20-22), whether anyone at WSU set her schedule or her compensation (*Id.,* p. 156 ln 2-4), whether anyone at WSU could fire or discipline her (*Id.,* p. 156 ln 14-21), whether she taught classes at WSU (*Id.,* p. 156 ln 22-24), and whether she had the right to control his work. *Id.*, p. 160 ln 14-18.

### b. Dr. Wilkerson-Uddyback's title of "Voluntary Faculty" member with WSUSOM changes nothing.

28.     Upon information and belief, Plaintiff will rely on the fact that Dr. Wilkeson-Uddyback has the title of "Voluntary Clinical" Faculty member for WSU as support for the dual employment theory.  This link does not exist.

29.     *First*, WSUSOM's published guidelines for "Voluntary Appointments" from the School's Office of Faculty Affairs and Professional Development state that "**Voluntary faculty members are not employed by WSUSOM**." *See* **Ex. J** (emphasis added).

30.     *Second*, context here is important. Dr. Wilkerson-Uddyback's clinical

specialty is Emergency Medicine. The reason she holds the title of Voluntary Clinical Faculty at WSU (and with Central Michigan and Michigan State as well) was to formally identify her as an individual who could, if and when needed, provide ED medical training to medical students in a DMC clinical setting consistent with all educational accreditation guidelines and/or best practices. Decl. of W-U, ¶8, **Ex. A**. She did not teach at WSU. *Id*.

31.    ***Third***, she did not communicate with anyone in regard to Dr. Berry or his implicit bias Memo in her capacity as a Voluntary Clinical Faculty member. Decl. of W-U, ¶9, **Ex. A**. Nothing in this case involves her clinical work in a DMC Emergency Department. *Id*. All her interactions and engagement on this issue were in her capacity as a representative of the DMC. *Id*.

32.    ***Finally***, Plaintiff's own testimony undercuts his "faculty" argument. He testified that although he knew she was a voluntary faculty member, he was unaware of any specifics. He stated: "but any of the details, as I've just testified, I don't – I'm not aware of them." Berry dep., p. 168 ln 25; p. 169 ln 1-16, **Ex. F**. Put simply, he does not even know what the title means, let alone produce evidence that it means something salient to an employment relationship.

> **C.    Dr. Wilkerson-Uddyback's activities were not due to Plaintiff's race or the topic of implicit bias, and did not cause an employment-related consequence for Plaintiff.**

33.    Plaintiff testified that he sued Dr. Wilkerson-Uddyback because she

allegedly disparaged him, sought to have him dismissed as the Interim Chair of the OB/GYN Department, and sought to bar from him having contact with the residents. Berry dep., p. 176 ln 3-8, **Ex. F**.

34.     But he did not link this alleged conduct to his race or his Memo. When asked why he believed Dr. Wilkerson-Uddyback engaged in this conduct toward him, he testified as follows: "**I don't know**. I'm not inside her mind…she expressed her anger to me about the loss of the REI program, which she blamed me for. She told me that." *Id.*, p. 178 ln 18-22 (emphasis added).

35.     She never made any statements or suggested that WSUSOM should take any action as to Plaintiff due to his race or him expressing an opinion on the topic of implicit bias in the medical field. Decl. of W-U, ¶10, **Ex. A**.

36.     Rather, the DMC and Dr. Wilkerson-Uddyback shared the goals of enhancing opportunities for underrepresented healthcare professionals and educating peers on the issue of implicit bias. Her career is replete with efforts designed to further diversity, equity, and inclusiveness initiatives. *See* W-U CV, **Ex. I**; Decl. of W-U, ¶12, **Ex. A**. And within the GME programs, she and the DMC provided training to residents on the topics of implicit bias and related topics. *Id.* (explaining the implicit bias and DEI initiatives and training of residents).

37.     The DMC's and Dr. Wilkerson-Uddyback's involvement in this case consisted of offering information to WSUSOM and seeking to protect DMC

residents consistent with her DMC position and responsibilities. **First**, Plaintiff complains that when he scheduled a mandatory meeting of his Department, as well as the DMC residents, Dr. Wilkerson-Uddyback sought to have it canceled. (ECF No.20, PageID.214 at ¶¶40-41). Although Dr. Wilkerson-Uddyback asked then-Dean Schweitzer to cancel Plaintiff's meeting, it was the Dean's decision to do so. *Id.*, ¶40; W-U dep., p. 63, ln 8-25; p. 64, ln 1-2, **Ex. C**; Schweitzer dep., p. 46 ln 5-9, **Ex. D**. Moreover, her reason was not because of the topic of implicit bias, but her concerns for the residents and the need to hear their concerns first, as their employer, not WSU. W-U dep., p. 54 ln 19-25; p. 55 ln 1-6, **Ex. C** ("My responsibility was to make sure that I first meet with them, me, myself, as their employer to see what their issues were . . ."). Plaintiff knew this. He was told by former Dean Schweitzer that he canceled it because Dr. Wilkerson-Uddyback was concerned it would become a "public shaming and a browbeating of the residents." Berry dep., p.106 ln 20-25; p. 107 ln 1-8, **Ex. F**.

38.     **Second**, consistent with ACGME Requirements mandating a forum for residents to raise concerns (ACGME Requirements, II.C, **Ex. B**), the DMC held its own meeting of the residents. One of the suggestions following this meeting was for WSUSOM to "consider" replacing Plaintiff as Interim Chair. W-U dep., p. 80 ln 8-25; p. 81 ln 1-9, **Ex. C**. Yet, this did not occur. He was not removed as Interim Chair. Schweitzer dep., p. 51 ln 1-18, **Ex. D**. Former Dean Schweitzer did not recall even

14

considering it. *Id*. And he was not removed as faculty in relation to the residency programs. Berry dep., p. 120 ln 23-25 (admitting not barred from participation with residents); p. 176 ln 3-8, **Ex. F**.

39.     ***Third***, the same is true in relation to the topic of behavioral training for Plaintiff raised by the DMC. In an email from Dr. Wilkerson-Uddyback to current Dean Sakr in May 2022 (copying the DMC's CEO), it was **suggested** that Plaintiff would need to attend a behavior course and sign behavior agreements before he could continue to have contact with residents. 5/6/2022 Email, **Ex. K**. Yet, nothing came of this. Sakr dep., p. 124 ln 2-25; p. 125 ln 1-12, **Ex. E**.

40. The DMC never substantially limited or took adverse action in relation to Plaintiff's membership on the DMC Medical Staff or his clinical privileges. Berry dep., p. 136 ln 8-25; p. 137 ln 1-22, **Ex. F**.

41.     ***Fourth***, WSU and Dr. Sakr have noted as significant that Plaintiff was not appointed as the Specialist in Chief ("SIC") by the DMC, which is the head of any given medical staff department at the hospital. Sakr dep., p. 92 ln 8-25; p. 93 ln 1-16, **Ex. E**. Defendant WSU has explained that "the permanent chair position required the candidate to be eligible to be appointed as [SIC] at the [DMC], which Dr. Berry was not." *See* WSU's Amended Resp. to Plaintiff's First Set of Interrogatories, No. 5, **Ex. L**. Yet, the DMC's decision to not appoint Plaintiff as SIC was made ***before*** he sent his January 2022 Memo, and in any event, this decision

was made by the DMC CEO, not Dr. Wilkerson-Uddyback. Sakr dep., p. 93 ln 17-25; p. 94 ln 1-7, **Ex. E**; Berry dep., p. 152 ln 7-25; p. 153 ln 1-3, **Ex. F**; and Decl. of W-U, ¶14, **Ex. A**.

42.     ***Finally***, Dr. Wilkerson-Uddyback was a member of the OB/GYN Search Committee. W-U dep., p. 28 ln 1-6, **Ex. C**. She recalls that Plaintiff never applied but regardless, she did not say anything about Plaintiff in the Committee. *Id.*, p. 40 ln 6-23; p. 41 ln 1-25. Nor did she discuss Plaintiff with any committee members outside of the meetings. *Id*., p. 42, ln 1-5.

     **D.**    **Plaintiff has admitted that expressing an opinion on whether a person should hold a particular job is a matter of freedom of speech.**

43.     While complaining that Dr. Wilkerson-Uddyback sought to push him out as Interim Chair, Plaintiff himself expressed to then-DMC GME Designated Institutional Officer (Dr. Mark Juzych) that Dr. Wilkerson-Uddyback should be fired by the DMC. Plaintiff had a meeting with Dr. Juzych and others that ***Plaintiff*** secretly recorded, and which has since been transcribed. Regarding Dr. Wilkerson-Uddyback, Plaintiff stated: "**I want Uddyback removed . . .**" (Meeting Tr., p. 69 ln 21-25; p. 70 1-4, **Ex. M**) and "**[i]f the DMC had a lick of fucking sense, they would get rid of her.**" *Id*., p. 139 ln 5-7 (emphasis added).

44.     When asked if he believed he was entitled to express the opinion that Dr. Wilkerson-Uddyback should be fired, Plaintiff testified that: "This is a free

country and I have freedom of speech." Berry dep., p. 175 ln 10-17, **Ex. F**.

## IV.   PLAINTIFF'S CLAIMS IN THE AMENDED COMPLAINT

Plaintiff filed suit on April 26, 2023, and lodged an Amended Complaint a year later on April 11, 2024. The Amended Complaint has six causes of action, all based on WSUSOM's decision to hire someone other than Plaintiff as the permanent Chair of the OB/GYN Department:

- Count I is for violation of Title VI of the Civil Rights Act of 1964. This is solely against Wayne State University.

- Count II is for Violation of the Equal Protection Clause of the Fifth and Fourteenth Amendments to the U.S. Constitution, via 42 U.S.C. 1983. Plaintiff's Constitutional claim is based on the theory that Defendants are "state actors" acting under color of state law. Here, Plaintiff names Defendants Sakr, Kaur, and Wilkerson-Uddyback.

- Count III is for Race Discrimination under Elliott-Larsen Civil Rights Act, M.C.L 37.2201 et seq. ("ELCRA"). Like Count I, this is a basic employment discrimination claim, but under state law. It is against all Defendants.

- Count IV is also based on ELCRA but proffers a retaliation theory. It is against all Defendants.

- Count V is for Race Discrimination in Violation of Title VII of the Civil Rights Act, 42. U.S.C. §2000e-2(a)(1), §2000e-2(m). Plaintiff's counsel concurred that this Count only applies to WSU only.

- Count VI is for Retaliation in Violation of Title VII of the Civil Rights Act, 42. U.S.C. §2000e-3(a). Plaintiff's counsel concurred that this Count only applies to WSU only.

## V.   SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if, after examining the record and drawing all inferences in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 578 (6th Cir. 2004) (citing Fed. R. Civ. P. 56 (c)). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The non-moving party must do more than show that there is some abstract doubt as to the material facts and must present significant probative evidence in support of its opposition. *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## VI.   ARGUMENT

In Section VI(A), below, we explain that this Court should grant summary judgment on all claims because Dr. Wilkerson-Uddyback was not an employee or agent of WSUSOM. In Section VI(B), we incorporate the WSU Defendants' Motion for Summary Judgment and argue that, even if Dr. Wilkerson-Uddyback were an agent of WSU, she would be entitled to summary judgment for all the same reasons presented by the WSU Defendants. Finally, in Section VI(C), we argue that regardless of the foregoing, Plaintiff cannot establish she was a decision-maker or

caused an adverse outcome to his tenure as Interim Chair, let alone did anything to preclude him from applying to become the permanent Chair.

**A.    Each claim against Dr. Wilkerson-Uddyback is predicated on the unsupported assertion that she was an employee or agent of WSU.**

Plaintiff presupposes that Dr. Wilkerson-Uddyback was "jointly" employed by the DMC and WSU in all of his claims against her. (ECF No.20, PageID.206 at ¶9). The record establishes that this assertion is untrue.

**Count II**: The first claim involving Dr. Wilkerson-Uddyback is based on 42 U.S.C. §1983. Section 1983 claims are lodged against a person "acting under color of state law" and as such, only claims against state actors qualify. *See Howell v. Father Maloney's Boys' Haven, Inc*., 976 F.3d 750, 752 (6th Cir. 2020); *Mitchell v. Washtenaw Cnty.*, No. 22-10224, 2022 WL 2716508 (E.D. Mich. July 13, 2022) (dismissing Section 1983 claims against individuals who were not state actors), **Ex. N**. There are no facts that Dr. Wilkerson-Uddyback was employed by WSU such that she theoretically could be a "state actor."

The record is entirely in her favor on this point, and there is no evidence to support any conceivable test or standard for employment or dual employment. *See e.g., E.E.O.C. v. Skanska USA Bldg., Inc.*, 550 F. App'x 253, 256 (6th Cir. 2013) (major factors include the "entity's ability to hire, fire or discipline employees, affect their compensation and benefits, and direct and supervise their performance."). To the contrary, the Statement of Material Facts ("SOMF"), Section II above, clearly

establishes that Dr. Wilkerson-Uddyback: (a) worked exclusively for the DMC (SOMF, ¶21), (b) did not have control over (or was controlled by) anyone at WSU (SOMF, ¶¶22, 25-27), and (c) engaged with WSUSOM on issues involving Plaintiff in her capacity as a DMC employee. SOMF, ¶24.

She got involved with WSU because the DMC was the sole "sponsor" of the OB/GYN residency program and was subject to ACGME Requirements designed to protect residents (SOMF, ¶¶1-8, 10), the residents were DMC employees (SOMF, ¶1), and they had had expressed concerns about Plaintiff. SOMF, ¶¶11-15.

Next, her title of "Voluntary" faculty member is entirely inapposite to this case. It does not make her an employee of WSU, and nothing in the case involves any clinical work she engaged in during her time at the DMC. SOMF, ¶¶28-32.

Finally, this is not just a matter of Dr. Wilkerson-Uddyback's subjective interpretation. WSU, in its own Motion for Summary Judgment, has confirmed that she was not an employee. Plaintiff even admits he does not have facts to support his "joint" employment allegation. SOMF, ¶25.

**Counts III-IV**: The next two claims are discrimination and retaliation claims brought under the ELCRA and again are predicated on the notion that Dr. Wilkerson-Uddyback was an employee or "agent" of WSU. An entity's agent theoretically can be liable under the ELCRA, but the scope of who qualifies as an "agent" is limited. "[T]he term "agent" as used in the Elliott–Larsen Civil Rights Act is someone in a

20

supervisory capacity who exercises significant control over the plaintiff's hiring, firing, or conditions of employment." *Odigbo v. NW Airlines, Inc.*, 8 F. Supp. 2d 660, 664 (E.D. Mich. 1998); *Elezovic v. Bennett*, 731 N.W.2d 452, 458 (Mich. App. 2007). The same argument above regarding Count II applies with equal force here for Counts III and IV. There is no factual support to even infer that Dr. Wilkerson-Uddyback had supervisory capacity or control over Plaintiff, or WSU's employment decision.[1]

## B. The arguments in the WSU Defendants' Motion for Summary Judgment would apply to Dr. Wilkerson-Uddyback even if she was, in fact, a WSU employee or agent.

The WSU Defendants have lodged arguments that the University and all WSU individuals should be entitled to summary judgment. They proffer the core point that Plaintiff did not even apply for the position in the first instance, as well as other points. *See* WSU's Motion for Summary Judgment. Even if the Court were to

---

[1] The case of *Kubik v. Central Michigan University Board of Trustees, et al.*, 221 F. Supp. 3d 885, 903-04 (E.D. Mich. 2016) is illustrative. In *Kubik*, the plaintiff was a faculty member who sued CMU and individual Journalism Department faculty members after she was not reappointed to a tenure-track position following a pregnancy leave. The Court determined that even though faculty members were responsible for reviewing plaintiff's professional progress and that faculty members on the tenure committee voted against her, none had the authority to make the final decision whether to reappoint her. *Id.*, at 904. The faculty members were not "agents" and hence, could not be individually liable under ELCRA. That is the situation in our case. Plaintiff alleges at best (albeit falsely) that Dr. Wilkerson-Uddyback was a fellow faculty member whose input led to his failure to obtain the permanent Chair position.

conclude that there is an issue of fact regarding Dr. Wilkerson-Uddyback's employment status, then she would be in a similar position as Defendants Kaur and Sakr. Therefore, insofar as the Court grants summary judgment in favor of the WSU Defendants, then it should grant summary judgment in her favor too. Dr. Wilkerson-Uddyback expressly incorporates by reference the WSU's Motion for Summary Judgment.

### C.     Plaintiff cannot meet his burden of linking the conduct of Dr. Wilkerson-Uddyback to an adverse employment outcome.

Plaintiff's Equal Protection claim in Count II requires that he establish that Dr. Wilkerson-Uddyback engaged in *unconstitutional* conduct that was causally related to an adverse action. *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002) ("[d]amage claims against governmental officials alleged to arise from violations of constitutional rights cannot be founded upon conclusory, vague or general allegations . . ."); *Heyerman v. Cnty. of Calhoun,* 680 F.3d 642, 647 (6th Cir. 2012) ("[P]laintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law.").

Similarly, for his ELCRA claims in Counts III and IV, Plaintiff must prove a causal connection between Dr. Wilkerson-Uddyback's conduct and an adverse outcome. *See West v. Gen. Motors Corp.*, 469 Mich. 177, 186, 665 N.W.2d 468, 473 (2003) ("Something more than a temporal connection between protected conduct

and an adverse employment action is required to show causation where discrimination-based retaliation is claimed."); *Sniecinski v. Blue Cross & Blue Shield of Michigan*, 469 Mich. 124, 134–35, 666 N.W.2d 186, 193 (2003) ("Under either the direct evidence test or the McDonnell Douglas test, a plaintiff must establish a causal link between the discriminatory animus and the adverse employment decision.").

As explained below, even assuming that Dr. Wilkerson-Uddyback was an agent of WSU, the factual record does not establish a salient link between her and any adverse outcome as required by the legal standards discussed above.

### 1.    The Permanent Chair Position

WSU has explained that Plaintiff did not apply for the permanent chair position and hence, could not have been considered. Certainly, Plaintiff has not alleged that Dr. Wilkerson-Uddyback did anything to preclude him from applying. He could have done so but did not. But, even if he had applied and been considered, WSU contends he would not have been eligible in part because he was not the OB/GYN SIC at the DMC. SOMF, ¶41. The record is undisputed that the DMC's decision to not appoint Plaintiff as SIC was not hers, but solely the DMC CEO's decision. SOMF, ¶42.

The record is likewise clear that she was not the decision-maker as to who WSUSOM ultimately hired as the permanent chair. Plaintiff does not allege

23

otherwise. The Amended Complaint instead confirms that it was the Dean (Dr. Sakr) who made the decision. (ECF No.20, PageID.205,217 at ¶¶3; 61-62) ("Dr. Sakr then hired another candidate . . ." and "Dean Sakr told [Plaintiff] that he would not be considered for the permanent Chair position"). Dr. Wilkerson-Uddyback's role was to serve on the Committee, which did not have any final say. She cannot be held liable merely for serving on a committee that only could advance **recommendations**. *Sami v. Detroit Med. Ctr.*, 591 F. App'x 419, 423 (6th Cir. 2014) (dismissing individuals who expressed opinions but were not involved in the final decision); *Krohn v. Sedgwick James of Mich., Inc.*, 624 N.W.2d 212, 217 (Mich. App. 2001) (in ELCRA context, the conduct of "nondecision makers" is irrelevant); *Misane v. City of Bangor*, 2023 WL 2856692, at *10 (W.D. Mich., April 10, 2023) (dismissing defendant who had made a recommendation to the person who had the authority), **Ex. O**.

### 2.     The Interim Chair Position

The real gist of Plaintiff's gripe as to Dr. Wilkerson-Uddyback concerned his tenure as the *Interim* Chair. The Statement of Material Facts, *supra*, regarding the resident meeting (SOMF, ¶¶3-38), the notes and suggestions from the resident meeting (SOMF, ¶38), and the email about a potential behavior course and agreement (SOMF, ¶39) all relate to his rights and duties as the Interim Chair.

He does not make the causal link between any of **these** facts and WSU's

decision to hire someone else as permanent Chair. ***First***, Plaintiff did not even ascribe Dr. Uddyback's motives to his race or raising the topic of implicit bias. SOMF, ¶34. ***Second***, none of Dr. Wilkerson-Uddyback's alleged misdeeds caused a change to his status as Interim! He was not removed as Interim Chair based on any resident meeting or any suggestions arising out of it. He was not removed as a faculty member in relation to the residency program. He was not required to attend a behavior course or to sign a behavior agreement. And he never had any clinical privileges restricted or removed by the DMC. Finally, the fact that he was not named SIC at the DMC predated all of this and logically cannot be linked to him sending the Memo. Indeed, at best Dr. Wilkerson-Uddyback expressed opinions about Plaintiff's job performance, which Plaintiff himself did as to her job at DMC. SOMF, ¶¶43-44.

## VII.   CONCLUSION

The Court should grant Dr. Wilkerson-Uddyback's Motion and dismiss her from this case, with prejudice.

Respectfully submitted,

Dated: April 11, 2025

*/s/ Benjamin W. Jeffers*

Benjamin W. Jeffers (P57161)

25

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2025, my assistant filed the foregoing document with the Clerk of the Court using the United States Eastern District of Michigan e-filing system which will send notifications to all e-filing participants of record.

Dated:   April 11, 2025          By:   */s/ Benjamin W. Jeffers*
                                       Benjamin W. Jeffers (P57161)