**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DR. STANLEY M. BERRY,

Plaintiff,

v.

BOARD OF GOVERNORS OF WAYNE STATE UNIVERSITY, DR. SATINDER KAUR, in her individual capacity, DR. PATRICIA WILKERSON-UDDYBACK, in her individual capacity, and DR. WAEL SAKR, in his individual and official capacities.

Defendants.
_________________________/

Case No. 23-10981
Hon. Jonathan J.C. Grey

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 37, 38)**

## I. INTRODUCTION

On April 26, 2023, Plaintiff Dr. Stanley M. Berry filed this lawsuit against the Board of Governors of Wayne State University ("WSU"), Dr. Satinder Kaur, Dr. Patricia Wilkerson-Uddyback, and Dr. Wael Sakr. Berry alleges that defendants wrongfully failed to hire him as the permanent chair of the Department of Obstetrics and Gynecology (the "Department") at the WSU School of Medicine ("SOM"). (ECF No. 1.) In

Berry's amended complaint, he alleged defendants: (a) violated Title VI of the Civil Rights Act of 1964 ("Title VI"); (b) violated his 42 U.S.C. § 1983 rights pursuant to the Equal Protection Clause of the Fifth and Fourteenth Amendments to the U.S. Constitution; and (c) retaliated and discriminated against him on the basis of his race, in violation of the Michigan Elliott-Larsen Civil Rights Act, M.C.L. § 37.2201 et seq. ("ELCRA"), and Title VII of the Civil Rights of 1964 (42 U.S.C. §§ 2000e-2(a)(1), 2000e-2(m), 2000e-3(a)) ("Title VII"). (ECF No. 20.)

Wilkerson-Uddyback filed a motion for summary judgment (ECF No. 37), and the remaining defendants (the "WSU defendants") filed a separate motion for summary judgment. (ECF No. 38.) The motions are fully briefed. (*See* ECF Nos. 41–44.) The Court concludes that oral arguments would not aid in the disposition of the motions, and it rules on the briefs alone. E. D. Mich. L.R. 7.1(f)(2). For the reasons set forth below, the Court **GRANTS** both summary judgment motions.

## II. BACKGROUND

Non-party Detroit Medical Center ("DMC") sponsors many residency programs, including the Department's residency program, and the DMC contracts with WSU to provide teaching for Department

residents. (ECF No. 38, PageID.692; ECF No. 42, PageID.1848–1849.) Wilkerson-Uddyback served as the Vice President for Academic and Community Affairs for the DMC at all relevant times, and she oversaw all aspects of the DMC's graduate medical education programs and medical student rotations. (*Id.*) She was a "voluntary faculty member of WSU," so she could provide accredited teaching services to medical residents, but she was not paid by, or an employee of, WSU. (*Id.*)

**A. Interim Chair; Implicit Bias**

Berry is a "Black/African-American" physician and "current employee of" SOM. (ECF No. 1, at ¶¶ 4, 21.) In January 2021, the former Dean of the SOM, Dr. Mark Schweitzer, appointed Berry the interim chair of the Department, effective March 15, 2021. The appointment was expected to last until a permanent chair was appointed, and it "carrie[d] no presumption of renewal or continuing tenure." (ECF No. 38-12.)

In 2022, Berry learned of, and then shared with others, an interaction between a DMC resident and a Black patient at DMC's Sinai Grace hospital. Berry believed that implicit bias impacted the treatment of that Black patient. Berry requested that a memorandum regarding implicit bias be sent to all residents in the Department, and on January

24, 2022, Kaur sent an email to all residents in the Department about implicit bias in health care. (ECF No. 38-4; ECF No. 38-29; ECF No. 38-30.) On January 26, 2022, Berry sent a separate memorandum regarding the underlying patient incident and implicit bias (ECF No. 42-12), and then an email inviting everyone to a January 27, 2022 virtual meeting to discuss issues related to that memorandum. (ECF No. 42-13.) Schweitzer canceled the meeting Berry proposed.

**B. Permanent Chair Hiring Process**

WSU's Human Resources policy dated February 28, 2018 requires posting all open positions at WSU, except as otherwise indicated in the policy. (*See* ECF No. 38-8, PageID.786 at ¶ 1.1 ("In order to draw the best talent available to the University, and to aid compliance with the University's affirmative action responsibilities, this University Policy establishes a University policy that requires the posting of all position openings except those defined herein.").) There is no dispute that the Department's permanent chair is a position covered by that policy. (*Id.* at ¶ 3.1.) However, "ac[t]ing or interim positions" are not covered by that policy. (*Id.* at ¶3.3.)

The collective bargaining agreement between WSU and the

American Federation of Teachers requires that:

> When a new chair of a department (or administrator of equal function) is to be appointed, a committee shall be formed to seek and recommend candidates to the dean. Such a committee shall include N faculty members and academic-staff members from the department in question elected by the department for which the chair is being sought. One (1) student representative shall be selected by the School/College student council from among the departmental majors of that department. The President or their designee shall appoint N members.

(ECF No. 38-10, PageID.807.) Accordingly, in or about February 2021, the SOM formed a search committee to make recommendations for a permanent chair for the Department (the "search committee"). (ECF No. 38, PageID.696; ECF No. 38-11, PageID.814 at 31; ECF No. 38-14, PageID.830.) Dr. Noreen Rossi chaired the search committee, which held its kickoff meeting on March 4, 2021, 11 days before Berry became interim chair. (ECF No. 38-15, PageID.832.)

The search committee circulated, commented on, and ultimately approved a job posting for the permanent chair position.[1] (ECF No. 38-5, PageID.766 at 75; ECF No. 38-17, PageID.839–840 at 49–50.) The applicant information was then pulled from the WSU HR website and

[1] The record does not contain a copy of the posting.

provided to search committee members. (ECF No. 38-11, PageID.811 at 21–22, PageID.815 at 42.) As Rossi testified, the search committee did not discuss, and it cannot evaluate, any person who does not apply through the WSU job portal. (*Id.* at PageID.816 at 54–55.)

The search committee began interviewing candidates in summer 2021; in August 2021, it recommended three candidates for the permanent chair position. (ECF No. 38, PageID.696–697 at ¶¶ 24, 25.) By March 5, 2022, the Rossi search committee had not hired anyone to fill the permanent chair vacancy. (ECF No. 38, PageID.697.) About that time, Sakr became interim dean of the SOM, as Schweitzer had stepped down. (ECF No. 42, PageID.1851.) Sakr spoke to two candidates recommended by the search committee, as well as two internal candidates, but they were not interested in being the permanent chair. (ECF No. 38, PageID.697–698; ECF No. 42, PageID.1851–1852.)

Berry does not argue that he approached anyone about the permanent chair position prior to April 22, 2022, and he concedes that he "did not submit [his] name for consideration when the Chair Search Committee headed by Dr. Noreen Rossi was active." (ECF No. 38-25, PageID.887.).

On April 22, 2022, Berry emailed Rossi, expressed his interest in the permanent chair position, and attached his CV. (*See* ECF No. 38-24, PageID.885.) Rossi responded to Berry the same day, stating:

> If the search is reopened, I believe the process will be for you to apply via that mechanism, that is, through the website for WSU.
>
> Will check on that and let you know for sure.
>
> I have not heard anything yet from the Dean.

(*Id.*) On May 9, 2022, Rossi emailed Berry that she had "not yet heard a word from the Dean's office re: opening up the search again although I have written the dean a couple of times." (ECF No. 38-25, PageID.887.)

On June 2, 2022, after learning from a colleague, Dr. David Bryant, that Bryant had applied for the permanent chair position, Berry emailed Sakr. (*Id.*; *see also* ECF No. 20, PageID.217 at ¶ 61.) Berry wrote that he had: (1) spoken with Bryant; and (2) learned that Bryant had contacted Sakr and asked to be considered for appointment as permanent chair. (*Id.*) Berry understood that to mean Sakr was considering Bryant for the permanent chair position. (*Id.*)

Berry wrote Sakr that he was still interested in the permanent chair position and attached his CV for Sakr's consideration. (*Id.*) Berry

also acknowledged that he did not "submit [his] name for consideration when the Chair Search Committee headed by Dr. Noreen Rossi was active[,]" but stated that, in the spring of 2022, he "submit[ed] [his] CV to her when [he] learned that the search had failed." (*Id.*) Berry further wrote, "I received an email back from [Rossi] telling me that the committee was not active and that if it became active, I would need to apply online and submit [m]y CV. I have embedded her email responses below[,]" (*Id.*) Rossi's April 22, 2022 email response to Berry was embedded in Berry's email to Sakr. (*Id.*) Sakr states that he was surprised by the email because Berry previously had expressed plans to move to a different state. (ECF No. 38, PageID.698 at ¶ 36; ECF No. 42, PageID.1852 at ¶ 36.)

Sakr and Berry spoke subsequent to the June 2, 2022 email. (ECF No. 42-4, PageID.2254; ECF No. 38-4, PageID.756.) Sakr testified that he told Berry that Berry would have to "respect the process" and "apply through the formal channels." (ECF No. 38-4, PageID.756 at 90, 92.) Berry denies Sakr told him to apply online for the permanent chair position. (ECF No. 42-10, PageID.2815.) Berry also avers that neither Sakr nor Rossi told Berry the permanent chair position had been

(re)posted or reminded him "to apply online after my initial emails to them expressing my desire to be considered for the Permanent Chair position." (*Id.*)

The search committee interviewed Bryant on June 24, 2022, and an external candidate, Dr. Helene Bernstein, on June 30, 2022. (ECF No. 38, PageID.699 (citing ECF No. 38-27; ECF No. 38-11, PageID.821).) On July 1, 2022, the search committee voted in favor of advancing Bryant's name for further consideration with respect to the permanent chair position. (*See* ECF No. 38-28.) Sakr decided to appoint Bryant as permanent chair "shortly thereafter." (ECF No. 38-4, PageID.758.) Neither the search committee nor Sakr considered Berry for the permanent chair position because Berry did not follow the required process to apply for position, i.e., by applying through the WSU job portal. (*See* ECF No. 38-4, PageID.759; ECF No. 38-11, PageID.816.)

## III. LEGAL STANDARD

The Federal Rules of Civil Procedure provide that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes

will preclude summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The Court views the record in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *Blackmore v. Kalamazoo Cnty.,* 390 F.3d 890, 895 (6th Cir. 2004).

Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322–323. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

## IV. ANALYSIS

### A. Title VII and ELCRA Discrimination and Retaliation

Generally, a plaintiff seeking to establish a prima facie case of discrimination when alleging a failure to promote claim must submit evidence that: (1) he was a member of a protected class; (2) **he applied** for and was qualified **for a promotion**; (3) he was considered for and denied the promotion; and (4) other employees with similar qualifications who were not members of the protected class received the promotion. *See, e.g., Dews v. A.B. Dick Co.*, 231 F.3d 1016 (6th Cir. 2000) (citing *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1095 (6th Cir. 1996); *Wanger v. G.A. Gray Co.*, 872 F.2d 142, 145 (6th Cir. 1989); *Brown v. Tenn.*, 693 F.2d 600, 603 (6th Cir. 1982)).

To establish his prima facie case of retaliation under Title VII/ELCRA, Berry must show that: (1) he engaged in protected activity; (2) defendants had knowledge of the protected conduct; (3) **defendants took an adverse employment action towards him**; and (4) there was a causal connection between the protected activity and the adverse

action. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008); *see also Fenton v. HiSAN, Inc.*, 174 F.3d 827, 831 (6th Cir. 1999). In this case, the alleged adverse employment action was the failure to promote him to the Department's permanent chair, an employment action the Sixth Circuit recognizes as adverse. *See, e.g., Smith v. City of Salem*, 378 F.3d 566, 575–576 (6th Cir. 2004).

The parties' focus on whether Berry suffered an adverse employment action; specifically, whether Berry applied for the permanent chair position, such that there could even be an adverse employment action to form the basis of discrimination or retaliation. The WSU defendants contend that Berry's cause of action fails because he never submitted a formal application for the permanent chair position through the WSU job portal. Berry counters that the circumstances in this case dictate that his expression of interest in the permanent chair position to Rossi and Sakr was sufficient to satisfy the requirement that he applied for the permanent chair position he alleges defendants denied him. For the following reasons, the Court concludes that Berry's failure to formally apply for the permanent chair position through the WSU job portal is fatal to his cause of action.

In the Sixth Circuit, it is well-established that "if an employer follows a firm hiring procedure, the employer is allowed to enforce the policy." *Grant v. Harcourt Brace Coll. Publishers*, 191 F.3d 452, 1999 WL 717982, at *4 (6th Cir. Sept. 9, 1999) (unpublished) (citing *Williams v. Hevi-Duty Elec. Co.*, 819 F.2d 620, 629–630 (6th Cir. 1987), *cert. denied*, 484 U.S. 970 (1987)).[2] *See also Nguyen v. City of Cleveland*, 229 F.3d 559, 564 (6th Cir. 2000) (court affirmed summary judgment because plaintiff did not apply for the position, which meant he could not satisfy his prima facie discrimination case); *Johnson v. Cargill, Inc.*, 932 F. Supp. 2d 872, 888 (W.D. Tenn. 2013) (no exception to the "apply for position" prong where employer's "ordinary procedure for soliciting applications from current employees for open positions" was posting a position in a specific place).

Years earlier, the Sixth Circuit similarly held that the plaintiff failed to establish a prima facie discrimination claim because the record

[2] Berry claims that defendants' reliance on *Williams v. Hevi-Duty Elec. Co.*, 819 F.2d 620 (6th Cir. 1987) is misplaced because *Williams* was decided before *Wanger* and *Dews*, such that *Williams* did not consider the exceptions set forth in those two cases. (ECF No. 42, PageID.1869.) However, *Wanger* affirmatively recognized the *Williams* decision, *see Wanger*, 872 F.2d at 147, and *Dews* did not mention or address the *Williams* case at all. Further, other than noting Berry's argument in this footnote and including the *Grant* court's citation to *Williams* above, this Court also does not mention, address, or rely on *Williams*.

showed that the employer:

> publicized the position, received numerous applications, and interviewed several people for the position. Therefore, it is clear that [the employer] did not have a policy of hiring without publicizing the position and accepting applications. In any event, the job opportunity advertisement published in the newspaper must be construed as constructive notice to Wanger of the job, necessitating that he apply before alleging discrimination.

*Wanger*, 872 F.2d at 146.

Berry correctly argues that many courts have recognized exceptions to the rule that an employee must submit a formal application for an open position. In fact, as the *Grant* court stated, "depending on the particular case, an employee need not formally apply for a position." *Grant*, 1999 WL 717982, at *4 (citing *Wanger*, 872 F.2d at 145–146;[3] *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 348–349 (3d Cir.1990) (listing cases)). However, a review of the circumstances in this case, as well as the relevant case law, including cases upon which Berry relies, demonstrate that this is not a case where candidates for an open position did not need to formally

---

[3] In *Wanger*, the Sixth Circuit cited a Seventh Circuit case that held that, if an employer promotes employees into open positions without asking for applications or posting the opening, "the application requirement of the prima facie case is loosened somewhat" and a plaintiff can satisfy the prima facie case by showing that, "had she known of an . . . opening, she would have applied." *Wanger*, 872 F.2d at 146 (quoting *Box v. A & P Tea Co.*, 772 F.2d 1372, 1377 (7th Cir. 1985) (citation omitted)). As set forth above, the *Wanger* court did not find that exception applicable given its facts.

apply.

In *Dews*, the Sixth Circuit stated:

> [I]n failure to promote cases, a plaintiff does not have to establish that he applied for and was considered for the promotion **when the employer does not notify its employees of the available promotion or does not provide a formal mechanism for expressing interest in the promotion**. Instead, the company is held to a duty to consider all those who might reasonably be interested in a promotion were its availability made generally known.

*Dews*, 231 F.3d at 1022 (emphasis added).

In *Dews*, there was no formal application process, the company filled positions without accepting applications, and the company only considered for promotion the employees that it promoted. *Id*. at 1021. Further, even though the plaintiff learned of the position at issue and expressed interest to a supervisor, the supervisor "dissuaded him from pursuing the position." *Id.* On those facts, the *Dews* court ultimately held that the plaintiff established a genuine dispute of material fact that the plaintiff satisfied the "applied for" component, even without submitting a formal application. *Id.* at 1022.

In *King v. Enterprise Leasing Co. of Detroit*, No. 03-71778, 2007 WL 1806208 (E.D. Mich. June 21, 2007), the court held that the *Dews* exceptions applied "[b]ecause there was no formal mechanism for an

employee to apply for or express interest in an available position and there [wa]s a genuine dispute of material fact regarding whether [the employer] posted or otherwise gave notice of all job openings." *Id*. at *6. In *King*, the employer "did not consistently post notices for open positions and there was no formal mechanism for them to apply," as "the process for expressing interesting interest in an open position was informal." *Id*. In fact, one manager testified that "employees simply need[ed] to express an interest, verbally or otherwise, to an immediate supervisor to be considered for any available openings in his area." *Id*.

In *Bazzi v. YP Advertising & Publishing, LLC*, No. 15-10741, 2016 WL 4493676 (E.D. Mich. Aug. 26, 2016), the court held that the plaintiff, who did not apply for several available positions, still established a prima facie case under the *Dews* exceptions with respect to one available position. *Id*. at *7. The employer claimed that it had a formal mechanism by which to post and apply for all relevant positions, and they were all posted on a YP job website to which all employees had access. *Id*. at *2. The plaintiff, however, asserted that when she asked management for a link that she could use to apply for relevant positions, she was given a link to an AT&T job site the employer formerly used, not the YP job

website. *Id.* She also claimed that she was not even provided the requisite YP user ID until many positions posted on the YP job site had been filled. *Id.* For those reasons, the court found that a genuine dispute of material fact existed whether the employer notified her of several openings or told her to use the YP job site (rather than the AT&T job site that was no longer used) to apply for the openings. *Id.*

The *Bazzi* court also concluded that "a reasonable jury could find that Plaintiff applied for a promotion that Defendant invited." *Id.* at *7. That conclusion was based on evidence that two different managers notified the plaintiff of openings or invited her to submit her resume to be considered for positions, one of which she interviewed for and one of which she did not interview because someone else had tentatively been chosen to fill it. *Id.*

In *Coles v. Scion Steel, Inc.*, No. 20-12606, 2021 WL 4472777 (E.D. Mich. Sept. 30, 2021), the court held that plaintiff's failure to promote claim could proceed even though he did not apply for the position at issue. The court found that plaintiff's allegations that the employer "deliberately concealed job openings for which he was qualified for the purpose of filling the positions with non-protected individuals" was the

equivalent of failing to notify plaintiff of the position. *Id.* at *2. The court stated that, because the employee plausibly alleged that the employer was aware of his interest in the open positions but did not notify him of the position, "the company is held to a duty to consider all those who might reasonably be interested in a promotion were its availability made generally known." *Id.* (citing *Dews*, 231 F.3d at 1022) (internal quotations omitted).

In *Owens v. Wellmont, Inc.*, 343 F. App'x 18, 24–25 (6th Cir. 2009), the Sixth Circuit held that the plaintiff satisfied the "applied for the available position" element even though she did not formally apply for the relevant position. The Court noted that "Owens did more than make a generalized expression of interest in working for Wellmont—Owens specifically informed Adams that Owens was interested in a position that was currently open. Moreover, the record supports an inference that Wellmont had offered Owens positions in the past without a formal application." *Id.* at 25.

Based on that evidence, the *Owens* court stated that "it seems clear that, under the circumstances, a formal application was not required" and "Owens made 'a reasonable attempt to demonstrate to the employer

that [s]he [wa]s interested in the job.'" *Id.* (citing *Grant*, 1999 WL 717982, at *4; *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 348 (3d Cir. 1990) (in a case where there was an informal job application process, the court stated, "Courts have generally held that the failure to formally apply for a job opening will not bar a Title VII plaintiff from establishing a prima facie claim of discriminatory hiring, as long as the plaintiff made every reasonable attempt to convey his interest in the job to the employer.")).

Berry relies on *Dews, King, Bazzi, Coles, Owens*, and *Wanger* to support his assertion that he "applied for" the position when he sent an email with his CV attached to: (1) Rossi (on April 22, 2022); and (2) Sakr (on June 2, 2022). (ECF No. 38, PageID.698 at ¶¶ 33, 36; ECF No. 42, PageID.1852 at ¶¶ 33, 36.) Berry's reliance is generally misplaced, as the key facts of this case are unlike those in any of those cases.

The only one of those cases that is similar to this case was *Wanger*, which held that the plaintiff's discrimination claim failed because a position published in an "advertisement . . . in the newspaper must be construed as constructive notice to [the plaintiff] of the job." *Wanger*, 872 F.2d at 146. Similarly, the permanent chair position was posted on (at least) the WSU website, specifically, at WSU's job portal. The facts of this

case also parallel those in *Wanger* because WSU "received numerous applications, [] and interviewed several people for the position," and there is no evidence that WSU had "a policy of hiring without publicizing the position and accepting applications" for permanent chair positions. *Id.*

The facts of the other cases are unhelpful to Berry. Here, unlike in *Dews*, there is no evidence that the Department (or the SOM or WSU) filled positions without accepting applications or considered only those employees it promoted. In this case, there were external and internal candidates who were considered, all of whom applied through the WSU job portal. Moreover, there is no evidence that anyone at WSU dissuaded Berry from applying for the permanent chair position, and at least Rossi told him where to apply (the WSU website). Likewise, contrary to *King*, there is no evidence that the permanent chair position was not posted or that a person could apply simply by expressing interest. Rather; Rossi's reply to Berry's first query and expression of interest in the permanent chair position specifically indicated otherwise. (ECF No. 38-24, PageID.885 ("the process will be for you to apply . . . through the website for WSU.").)

The instant case is also very different from *Bazzi*. WSU had a

website that included job postings to which Rossi directed Berry, as Berry acknowledged when he emailed Sakr on June 2, 2022. There also is no evidence that anyone ever solicited Berry to apply for a position or, as Berry seemingly would like the Court to find, that Berry received an open position without applying. He twice states in his response brief that he previously obtained jobs without a formal application (*see* ECF No. 42, PageID.1867, 1874), however, Berry never identifies any such position(s).

If Berry is referring to the interim chair position, the Court is not persuaded that an appointment to an interim chair position requires the same process as filling the permanent chair position. Berry offers no evidence to support a finding that the processes for hiring a permanent chair and the appointment of an acting or interim chair are the same. Further, the collective bargaining agreement between WSU and the American Federation of Teachers evidences that the processes are different. That collective bargaining agreement sets forth a detailed process for hiring a department chair, including the formation of a committee to make recommendations to the applicable dean, with a slate of at least three candidates to be presented to the President or their designee. (ECF No. 44-3, PageID.3269–3270.) However, the appointment

or reappointment of an interim or "acting chair" only requires that "the President or their designees shall consult with the selection advisory committee, and/or an appropriate faculty and academic-staff committee of the department." (*Id*. at PageID.3270.) The Court also notes that the WSU posting policy does not appear to apply to "interim positions." (ECF No. 38-8, PageID.786 at ¶ 3.3.)

This case is distinguishable from *Coles* because there is no evidence that the permanent chair position was hidden or concealed from Berry, notwithstanding his contention that "the job opening was deliberately concealed from him. Rossi claimed the search was inactive, then told Dr. Berry that she had not heard a single peep about re-opening it." (ECF No. 42, PageID.1868.) Berry also argues that it would have been futile to go online to try to find a job posting that he was told was not active. (*Id.* at PageID.1867.) Both arguments are unsupported and even undermined by his own actions and testimony.

First, even if no one at WSU ever notified Berry that the permanent chair was (re)posted in the spring/summer 2022, many undisputed circumstances existed that "notified" Berry of the available promotion and that the permanent chair position was open: (1) Berry was the

interim chair of the Department, so by the very nature of the position title, he knew that his position was not permanent; (2) he knew that a search committee had been formed to make recommendations regarding a permanent chair; and (3) his emails to Rossi and Sakr demonstrated that he knew the search committee had not selected a permanent chair—and that the permanent chair position remained open—as of April 22, 2022 and June 2, 2022. Moreover, Berry knew "moves were being made to find a permanent chair," which is why he emailed Sakr on June 2, 2022 after learning that Bryant talked to Sakr about the permanent chair position and that Sakr was considering Bryant for the position. (ECF No. 44-2, PageID.3254; ECF 38-26, PageID.895–896.)

Second, both Bernstein, an external candidate, and Bryant were able to, and did, apply for the permanent chair position through the WSU job portal in April and May 2022, respectively. (*See* ECF No. 42-22, PageID.3069 (Bernstein Application dated April 19, 2022); ECF No. 42-23, PageID.3071 (Bryant Application dated May 25, 2022); *see also* ECF No. 38-11, PageID.815 (Rossi's testimony that Bryant "applied through the WSU HR website like everybody else.").) In fact, in his zeal to argue that Sakr was pre-interviewing Bryant behind the scenes prior to

submitting a formal application, Berry prefaced the argument by recognizing that Bernstein had applied for the position. (*See* ECF No. 42, PageID.1868 ("not only was Bernstein able to apply.").) As such, it would not have been futile for Berry to go online in April or May 2022 to look for the Department's permanent chair posting.[4]

This case is also distinguishable from *Owens* because unlike the plaintiff in that case, there is no evidence that Berry had been offered positions in the past without a formal application. Moreover, the key difference between this case and *Owens*—and *Dews, King, Bazzi,* and *Coles*—is that in this case there was a formal mechanism for applying for the open position, i.e., the WSU job portal on the WSU website, notwithstanding Berry's unsupported statement that he "did not" "ever see the job posting." (ECF No. 38-26, PageID.896 at 85.) [5]

It is undisputed that Rossi communicated to Berry on April 22, 2022

[4] Berry does not argue that it would have been futile to submit a formal application "because discrimination is so entrenched or pervasive." *See, e.g. Allen v. Deerfield Mfg.*, 424 F. Supp. 2d 987, 994 (S.D. Ohio 2006) (citing *Wanger*, 872 F.2d at 145); *see also Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 576 (6th Cir. 2004); *McEwen v. MGM Grand Detroit*, 2006 WL 83476, at *10 (E.D. Mich. Jan. 12, 2006).

[5] Berry does not cite any testimony that he ever looked to see if the position was posted on the WSU job portal, nor does his affidavit represent that he tried to find the permanent chair position on the WSU job portal. (*See* ECF No. 42; ECF No. 42-10.)

that she believed the process for applying for the permanent chair position was "through the website for WSU." (*See* ECF No. 38-24, PageID.885; *see also* ECF No. 38-8.).) Similarly, Sakr, Hobson, and Rossi testified that hiring for the permanent chair position followed the formal application process and that the permanent chair position was posted on the WSU job portal. (ECF No. 38-5, PageID.766; ECF No. 38-11, PageID.815; ECF No. 38-17, PageID.839–840.) Moreover, both candidates who were interviewed by the search committee June 2022 (Bryant and Bernstein) applied through the WSU job portal in April and May 2022, respectively. (*See* ECF No. 42-22, PageID.3069 (Bernstein Application dated April 19, 2022); ECF No. 42-23, PageID.3071 (Bryant Application dated May 25, 2022); *see also* ECF No. 38-11, PageID.815 (Rossi testified that Bryant "applied through the WSU HR website like everybody else")[6]; ECF No. 42, PageID.1868.) Berry acknowledged that process when he referenced it in his June 2, 2022 email to Sakr. (*See* ECF No. 38-25, PageID.887 ("I received an email back from [Rossi] telling me that the committee was not active and that if it became active, I would

[6] The posting number on each of Bryant's and Bernstein's online applications (Posting #: 045474) matched the posting number on the list of candidates on the Faculty Hiring Plan for the permanent chair position. (See ECF No. 42-2, PageID.3069, 3071; ECF No. 44-4, PageID.3276.)

need to apply online and submit [m]y CV.”).)

Finally, Berry testified that if going to the WSU job portal was required, he would have expected that Rossi or Sakr would have told him that. (*Id.* at PageID.895–896 at 84–85.) However, Berry's email to Sakr unequivocally demonstrates that: (1) on April 22, 2022, Rossi emailed Berry—that “If the search is reopened, I believe the process will be for you to apply via that mechanism, that is, through the website for WSU;” and (2) Berry understood that he “would need to apply online.” (ECF No. 38-25, PageID.887–888.) In other words, Berry understood that he had to apply via the WSU job portal. Berry does not allege that WSU did not post the position, that the WSU job portal malfunctioned, or that he could not apply on the WSU job portal.

Berry's failure to apply through the WSU job portal means he cannot: (1) establish prong two of a discrimination claim; or (2) demonstrate that he suffered an adverse employment action that would support a retaliation claim, for failure to promote. For the reasons stated above, the Court finds that Berry has not established a prima facie discrimination or retaliation claim and **DISMISSES** Counts III–VI.

**B. Title VI Claim**

Title VI prohibits discrimination on the basis of race, color, or national origin "under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To state a Title VI claim, a plaintiff must allege facts showing that: (1) he was "excluded from participation in, [ ] denied the benefits of, or [ ] subjected to discrimination under a program or activity receiving Federal financial assistance;" and (2) the defendant intentionally discriminated against him on the basis of race, color, or national origin. *See id.*; *Foster v. Michigan*, 573 F. App'x 377, 388 (6th Cir. 2014) (noting that "Title VI targets intentional discrimination only," so a plaintiff must plead "plausible claims of intentional discrimination" to avoid dismissal). "[A] complaint that includes conclusory allegations of discriminatory intent without additional supporting details does not sufficiently show that the pleader is entitled to relief." *Nali v. Ekman*, 355 F. App'x 909, 913 (6th Cir. 2009); *see also Iqbal*, 556 U.S. at 680.

As discussed above, Berry cannot establish a prima facie case of discrimination by defendants because he did not apply for the permanent chair position. Further, as Berry did not apply for the permanent chair position, defendants did not exclude him from or deny him participation

in the process of interviewing for, or actually being appointed to, the permanent chair position. Accordingly, the Court finds that Berry cannot satisfy either element of a Title VI claim and **DISMISSES** Count I.

### C. Equal Protection Claim

To establish an equal protection claim against a public employer under § 1983, the "plaintiff must show that the employer made an adverse employment decision 'with discriminatory intent and purpose.'" *Boger v. Wayne County,* 950 F.2d 316, 324–25 (6th Cir. 1991) (quoting *Charles v. Baesler,* 910 F.2d 1349, 1356–1357 (6th Cir. 1990)); *Gutzwiller v. Fenik,* 860 F.2d 1317, 1325 (6th Cir. 1988) (the plaintiff must prove by a preponderance of the evidence that she was the victim of "intentional and purposeful discrimination"). The plaintiff may not simply introduce evidence of discriminatory intent and suggest that "'such intent could have played a role in an adverse employment decision. Rather, a plaintiff is required to demonstrate that the adverse employment decision would not have been made "but for" her [race].'" *Boger,* 950 F.2d at 325 (quoting *Gutzwiller,* 860 F.2d at 1325).

Again, Berry cannot establish a prima facie case of discrimination by defendants because he did not apply for the permanent chair position.

Further, as Berry did not apply for the permanent chair position, there was no adverse employment decision to assess. Therefore, Berry's equal protection claim fails as a matter of law. The Court therefore **DISMISSES** Count II.

### D. Resolution

Since the Court has concluded that Berry's four counts must be dismissed, this cause of action is **DISMISSED WITH PREJUDICE**.

## V. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Wilkerson-Uddyback's motion for summary judgment (ECF No. 37) is **GRANTED**.

**IT IS FURTHER ORDERED** that the summary judgment motion filed by the WSU Defendants (ECF No. 38) is **GRANTED**.

**IT IS FURTHER ORDERED** that this cause of action is **DISMISSED WITH PREJUDICE**.

**SO ORDERED**.

Date: September 17, 2026

**s/Jonathan J.C. Grey**
Hon. Jonathan J.C. Grey
United States District Judge

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 17, 2026.

s/ **S. Osorio**
Sandra Osorio
Case Manager